Keith R. Verges
State Bar No. 20547650
Bill E. Davidoff
State Bar No. 00790565
Raymond E. Walker
State Bar No. 24037663
Ryan K. McComber
State Bar No. 24041428

Figari & Davenport, L.L.P.
3400 Bank of America Plaza
901 Main Street
Dallas, Texas 75202-3796
(214) 939-2000 – telephone
(214) 939-2090 – facsimile

Attorneys for Defendant Michael Kornman, Martha Kornman, Grant Kornman, and Claudia McElwee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| HERITAGE ORGANIZATION, L.L.C. | § § § | CASE NO. 04-35574-BJH-11 (Chapter 11) |
| DEBTOR. _____ | § § § § | |
| DENNIS FAULKNER, Trustee | § § | ADVERSARY NO. 06-03377-BJH |
| v. | § § | |
| GARY M. KORNMAN, et al. | § § | |

**DEFENDANTS MICHAEL KORNMAN, MARTHA KORNMAN, GRANT KORNMAN AND CLAUDIA MCELWEE'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL BAUCUM AND BRIEF IN SUPPORT**

Defendants Michael Kornman, Martha Kornman, Grant Kornman and Claudia McElwee (collectively "Defendants") file their Motion to Exclude the Expert Testimony of Daniel Baucum, and state:

## I. BACKGROUND

Plaintiff has hired a lawyer/professor to, in essence, usurp this court's role as arbiter of the law applicable to this case. In particular, plaintiff has designated Daniel Baucum ("Baucum"), a tax lawyer and professor at SMU Dedman School of Law, to testify as an expert. *See App*. 1-16, Ex. A.[1] Baucum's only experience is in testifying against law firms sued for malpractice (negligent tax advice); he testified that the law firms did not comply with their duty of care to their clients. The Trustee would now parlay that opinion into an ability to predict not only the possibility of unfiled litigation, but its outcome. The Court should exclude this proffered opinion because it is (1) a legal opinion within the exclusive province of the Court; (2) Baucum is not qualified to give the proposed opinion; and (3) the proposed opinion does not pass muster under *Daubert*.

## II. BAUCUM'S PROPOSED QULIFICATIONS AND OPINION

Baucum's only experience as an expert witness was providing opinions in seven malpractice cases by former Heritage clients against their attorneys, Lewis, Rice & Fingersh ("Lewis Rice" and "Malpractice Cases," respectively). [App. 42 (Baucum 269:10-17).] His opinion in all seven cases was essentially the same. [App. 26-27, 52-53 (Baucum 232:2-13, 233:10-25; Ex. 10).] In particular, he opined that the legal opinion Lewis Rice gave - that a capital gains tax savings strategy premised on Internal Revenue Code Section 752 (the

---

[1] Defendants are filing concurrently herewith an Appendix in support of its objection which contains (1) Plaintiffs' expert designation, and (2) Excerpts from Baucum's Deposition.

**DEFENDANTS MICHAEL KORNMAN, MARTHA KORNMAN, GRANT KORNMAN AND CLAUDIA MCELWEE'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL BAUCUM AND BRIEF IN SUPPORT -- PAGE 2**

"Strategies") would "more likely than not" be successful - breached the standard of care they owed the clients, and that the attorneys' breach proximately caused these clients damages. [App. 29-30, 43-44, 50-67 (Baucum 235:7-236:2; 272:22-273:1; Ex. 10).]

Baucum now seeks to opine well beyond the duties a lawyer owes a client in a particular case. Baucum will opine: (1) that there was a 100% probability that the IRS would audit each and every Heritage tax strategy; and (2) each client would not only lose, but suffer a penalty of at least 20%. [App. 35-37 (Baucum 246:4-16, 247:6-248:1).] Part and parcel of these opinions is Baucum's opinion on tax law, which in reality is more than opinion, given his 100% "probability" finding. Moreover, his opinion is *purely* legal: for example, he did not review any of documents from Heritage's client transactions. [App. 22 (Baucum 65:10-13).] Nor did he attempt to take into account any differences among the transactions. [App. at 44-45 (Baucum 273:15-274:3).] Rather, Baucum's opinions are based entirely on his training and experience as a lawyer and his review of the case law (including monitoring cases still in litigation on these issues) and IRS regulations and announcements. [App. 41 (Baucum 260:1-14).]

### III. ARGUMENT AND AUTHORITIES

#### A. Standards for the Admission of Expert Testimony.

Under Federal Rule of Evidence 702, a court may permit the testimony of an expert if their "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." In a case in which expert testimony is offered, the Court is charged with the role of "gatekeeper," only allowing testimony that is both reliable and relevant to the facts at issue. *General Elec. Co. v. Joiner*, 118 S. Ct. 512, 517 (1997); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S. Ct. 2786 (1993). Rule 104(a) of the Federal Rules of Evidence requires the judge to make a "preliminary assessment of whether

the reasoning or methodology is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *Daubert*, 113 S. Ct. at 2796). In exercising this gatekeeping function, the Court must determine whether the testimony is sufficiently reliable. *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167, 1175-76 (1999); *Vargas v. Lee*, 317 F.3d 498, 500 (5th Cir. 2003).

In *Daubert*, the Supreme Court crafted a five-factor test to assess whether the bases of an expert's opinion are scientifically valid or reliable. *Hathaway v. Bazany,* 507 F.3d 312, 318 (5th Cir. 2007). The factors include (1) whether the expert's theory has been or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rates of error of the theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert*, 113 S. Ct. at 2796-97; *Hathaway*, 507 F.3d at 318. In *Kumho Tire*, the Supreme Court gave the trial court leeway to replace or supplement these criteria, so long as the analysis furthered the twin goals of gatekeeping - to admit only relevant and reliable expert testimony. *Kumho*, 119 S. Ct. at 1175-76; *Pipitone*, 288 F.3d at 244. Importantly, the party offering an expert's testimony bears the burden of demonstrating that the expert is qualified and his opinions are relevant and reliable. *U.S. v Hicks,* 389 F.3d 514, 525 (5th Cir. 2004). Plaintiffs cannot meet their burden in this case.

### B. Baucum Seeks to Offer Improper Legal Opinions.

Baucum testified that his opinions regarding the Strategies are legal opinions:

> Q: What I'm asking is, is what you're here to testify to is the efficacy of the 752 strategy overall, correct?
>
> A: That's one issue, yes.

> Q: All right. And isn't that a legal opinion?
>
> A: Yes.
>
>                    \*   \*   \*
>
> Q: And what you're here to offer in this case as an expert witness are legal opinions, correct?
>
> A: Related to taxes, that is correct.

[App. 23 (Baucum 66:5-11; see also 66:18-22).]

Moreover, all of his opinions derive from his experience and study as a tax lawyer:

> Q: With respect to the -- the testimony that you're going to provide relating to the 752 tax strategies, the IRS challenges to those, whether those challenges would be effective, and potential consequences for taxpayer if, in fact, they were effective such as penalties or interest, will your opinions be based on your qualifications as a tax lawyer?
>
> A: My experience and qualifications as a tax lawyer, I believe it's fair to say, yes.
>
> Q: Would it also be fair to say that the opinion that you will be giving will derive from your study and practice of law as a tax lawyer?
>
> A: If I'm trying not to read too much into your question, I would say that's a fair statement.

[App. 41 (Baucum 260:1-14).]

     These opinions are inadmissible. Specifically, his opinions interpreting the case law to determine whether the Strategies would be successfully challenged by the IRS are nothing more than conclusions of law that are reserved, in whole, for this Court's evaluation, and are not appropriate issues for an expert witness. *See, e.g., United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984).

---

The court explained in *Zipkin*: "[e]xpert testimony in the law is excluded because the trial judge does not need the judgment of witnesses. [T]he judge (or the jury as instructed by the judge) can determine equally well the law . . . the special knowledge of the judge makes the witness' testimony superfluous." 729 F.2d at 387 (citations omitted). It is well established that no witness, including an expert witness, may testify to conclusions of law. *See, e.g., C.P. Interests, Inc. v. California Pools, Inc.,* 238 F.3d 690, 697 (5th Cir. 2001) (holding that Rule 702 does not permit "expert witnesses to offer conclusions of law"); *Burkhardt v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("each courtroom comes equipped with a "legal expert," called a judge and it is his or her province alone to instruct the jury on the relevant legal standards"). The rule *specifically* prohibits an attorney from giving expert legal testimony and espousing his own legal opinions and analysis as "expert" evidence. *See, e.g., Askanase v. Fatjo,* 130 F.3d 657, 672-73 (5th Cir.1997) (where court stated that lawyers, like other experts, may testify as to "matters of fact," but are prohibited from testifying to "purely legal matters").

Baucum's anticipated testimony is nothing more than legal conclusions dressed up as "expert opinions." By way of example Baucum asserts that: (1) the Strategies were unfounded based on then existing statutes, regulations and case law, and (2) that statutes and regulations empower the IRS to levy various penalties on errant tax payers. [App. 35-37 (Baucum at 246:4-16, 247:6-248:1).] These assertions are nothing more than arguments by an attorney as to matters of law, not matters of fact. This argument could just as easily be formulated and presented by *any* of the attorneys in this case, and invades the role reserved solely for the judge. Baucum's opinions are therefore improperly submitted as "expert evidence" under Rule 702.

Baucum cannot testify under the guise of an "expert" merely in order to make his particular legal arguments as Cox & Smith's co-counsel from the witness stand.

### C. Baucum is not Qualified.

Independent of the foregoing, Baucum is not qualified to testify to the Strategies at issue. Under Rule 702, a witness must be "qualified as an expert by knowledge, skill, experience, training or education." Fed. R. Evid. 702. At odds with this requirement, Baucum has never written any peer-reviewed articles concerning the subject transactions and his area of expertise does not include Section 752 transactions:

> Q: -- the -- the articles that you published in the early '90s and the mid '90s and the tax magazines, Matthew Bender, and the BNA Portfolios, is it fair to say didn't address these transactions that we've been talking about today having to do with 752?
>
> A: Yes.

[App. 32 (Baucum 240:18-23).]

> Q: Would you agree with me that the -- the sort of publication of speeches at -- that you've given for CPA groups, the ABA, or a CLE is not the same qualitative kind of publication as a peer-review journal that might be put out there to draw some fire or test the waters on the theory or academic premise?
>
> A: Well, if you ask it that way, I suppose that -- I suppose one could look at it that way. I personally, you know, have taken -- I guess I would agree with that.
>
> A: Yeah, I guess I agree with that.
>
> Q: Any other publications or articles related to 752?
>
> A. Not that I recall.

[App. 32-33 (Baucum 240:10-22; *see also* 240:24-241:9).]

---

Nor did his experience at the IRS include 752 transactions, as they had not yet appeared. [App. 31-32, 34 (Baucum 239:16-240:15; 242:2-3).] To the contrary, all of his opinions and analysis were developed exclusively for use in legal malpractice litigation:

> Q: Your legal analysis in the Lewis, Rice cases and the expert opinion that you are preparing to give in this case and have been giving throughout the day and will give at trial, is it fair to say that those have not been developed except for use in litigation?
>
> A: I think that's -- that's fair to say that this has only been developed in relation to the cases that we've -- that we've discussed.

[App. 44 (Baucum 273:7-14).]

To include an expert as sufficiently qualified to testify, the Court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). Baucum does not possess these qualifications. His analysis did not spring from his professional expertise; it was only the product of a narrow sort of legal malpractice case. Moreover, his lack of peer-reviewed works or methodology renders him unqualified to offer testimony in this case.

### D. Baucum's Opinions are not Reliable.

Even if he were qualified to testify in this case (which he is not), Baucum's opinions have no reliable basis, scientific or otherwise, permitting them to be aired as expert testimony in this case. The Court should be wary of purported experts that make "guarantees" in their roles of expert witnesses, particularly guarantees that fall woefully short when put into practice. A court may "rightfully exclude" expert testimony when it finds that "an expert has extrapolated data, and there is 'too great an analytical gap between the data and the opinion proffered.'" *Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (where court excluded

testimony from an expert that was "based on speculation, guess-work, and conjecture") (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512 (1997)). Here, Baucum offered no more than guess-work:

> Q: (BY MR. WALKER) You testified…that there was a hundred percent probability that the IRS would challenge the Section 752 transactions that are the subject of this litigation; is that -- is that correct?
>
> A: That's correct.
>
> Q: And you also testified that there was a hundred percent probability that the IRS would actually assess penalties on each of those dates?
>
> A: That's correct.
>
> Q: And…you also testified that there was a hundred percent possibility that the IRS would actually collect those penalties on each one of those dates, according to your analysis?
>
> A: According to my analysis, that is correct.
>
> Q: And this hundred percent probability, could we equate that in private practice to something akin to a guarantee of success or failure?
>
> A: A guarantee of success or failure, I -- I think I'm giving my guarantee when I give my opinion as to something. I'm saying I -- I believe that this is what will happen.

[App. 38-39 (Baucum 253:8-254:5; *see also* 254:6-255:9).]

Even more telling is the fact that when put to the test, Baucum's "guarantee" has not panned out in real life, further undermining the reliability of his testimony:

> Q: For each of the valuation dates on Exhibit Number 3, your testimony as an expert witness in this case is that there was a hundred percent likelihood that the IRS would both review the transactions, the 752 transactions, would challenge them, and would

---

> > ultimately prevail in their position, and that is your testimony with respect to all of these transactions during all of these dates?
>
> A: That is correct.
>
> Q: However, we know in hindsight that that actually didn't occur because, for example, in the Sala case, the taxpayer won?
>
> A: So far. That -- that's a trial court decision that will be appealed, I presume, by the Government, and so it remains to be seen if they win forever, for example. Maybe I'm going on too long. I'll leave it at that.
>
> Q: By the same token, they haven't lost yet and they do have a trial court ruling?
>
> A. That is correct.
>
> Q: And the taxpayer, for that purpose, has prevailed?
>
> A: That's correct.

[App. 39-40 (Baucum 254:25-255:23).]

Moreover, Baucum has not undertaken a review of all of the underlying client transactions:

> Q: You have not looked at the underlying factual differences among the individual client's transactions that underlay these Section 752 transactions, correct?
>
> * * *
>
> A: At any rate, I -- I had looked at those factual -- those facts in regards to the Lewis, Rice, some of the Lewis, Rice cases in the past. For this -- for this assignment, I have not looked at the individual facts of the individual cases.

[App. 44-45 (Baucum 273:15-20, 273:24-274:3).]

An expert's testimony is not admissible without "the existence of sufficient facts and a reliable methodology." *Hathaway,* 507 F.3d at 318. Baucum's guarantee as to the outcome of implementing the Strategies, which fell woefully short, along with an admitted lack of factual foundation for his testimony, indicates a tremendous deficiency as to the opinions he offered. Accordingly, the opinion is nothing more than unsupported speculation and lacks the requisite reliability to be admitted as an expert opinion.

## IV. **CONCLUSION**

For all the foregoing reasons, none of Baucum's opinions are appropriate or admissible under Rule 702, and therefore he should not be allowed to testify.

DATE: August 18, 2008

Respectfully submitted,

/s/ Raymond E. Walker
Keith R. Verges
State Bar No. 20547650
Raymond E. Walker
State Bar No. 24037663

FIGARI & DAVENPORT, L.L.P.
3400 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
TEL: 214/939-2000
FAX: 214/939-2090

## CERTIFICATE OF CONFERENCE

Counsel for Movants, Raymond E. Walker, conferred with counsel for Plaintiff, Deborah Williamson, on August 18, 2008. Ms. Williamson indicated she could not agree to the requested relief and that the motion was opposed.

/s/ Raymond E. Walker
Raymond E. Walker

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2008, the foregoing document was served via the Court's ECF, electronic filing system upon the parties reflected below:

David Bryant
Tracy Tallon
Cox Smith Matthews Inc.
1201 Elm Street, Suite 3300
Dallas, Texas 75270

Deborah D. Williamson
Cox Smith Matthews Inc.
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205

Cole B. Ramey
James P. Acosta
Crouch and Ramey, LLP
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202

Brian J. Wick
Brant C. Martin
Wick Phillips, LLP
2100 Ross Avenue, Suite 950
Dallas, Texas 75201

Brian P. Lauten
Sawicki & Lauten, LLP
4040 N. Central Expressway
Suite 850
Dallas, Texas 75204

J. Robert Forshey
Matthew G. Maben
Forshey & Prostok, LLP
777 Main Street, Suite 1290
Fort Worth, Texas 75102

/s/ Raymond E. Walker
Raymond E. Walker