U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*[Signature: Barbara J. Houser]*

**United States Bankruptcy Judge**

**Signed October 03, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE HERITAGE ORGANIZATION, L.L.C., | § | CASE NO. 04-35574-BJH-11 |
| | § | |
| Debtor. | § | |
| | § | |
| DENNIS FAULKNER, TRUSTEE, Plaintiff, | § | |
| | § | ADV. PRO. NO. 06-3377-BJH |
| - against - | § | |
| | § | |
| GARY M. KORNMAN, et al., Defendants. | § | |

### MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE

Before the Court is the "Certain Defendants Motion to Vacate Final Judgment Pursuant to Fed. R. Civ. P. 60(b)(4) and Fed. R. Bankr. P. 9024" (the "Motion") filed by Defendants Gary M. Kornman, Steadfast Investments, L.P., GMK Family Holdings, LLC, Strategic Leasing, L.P., Executive Aircraft Management, L.L.C., Tickchik Investment Partnership, L.P., Executive Air Crews,

L.L.C., Financial Marketing Services, Inc., Heritage Properties, L.L.C., Heritage Organization Agency, Inc., Valiant Leasing, L.L.C., Vehicle Leasing, L.L.C., and Ettman Family Trust I (collectively, the "Defendants"). In the Motion and its supporting Memorandum of Law, the Defendants argue that this "Court was without Article III power to enter such Final Judgment, and, thus, the Final Judgment and the Memorandum Opinion containing the findings and conclusions that support it are void," relying upon the Supreme Court's recent decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011).[1] *See* Memorandum of Law in Support of Defendants' Motion, Docket No. 791 at p. 2.

The Motion is opposed by Dennis S. Faulkner, former Chapter 11 Trustee of The Heritage Organization, L.L.C. ("Heritage")(which filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 17, 2004), who is now the trustee of a creditor trust established under the terms of the Second Amended Joint Plan of Liquidation (the "Plan") for Heritage that was confirmed by this Court on September 12, 2007 (the "Trustee"). The Trustee argues that: (1) the Motion is untimely under the applicable rules, (2) the Motion is not meritorious because the Court had subject matter jurisdiction and all of the Defendants expressly consented on several occasions to the entry of a final judgment by this Court, and (3) policy reasons dictate a denial of the Motion.

The Court heard the Motion on September 22, 2011. For the reasons explained more fully below, the Court will deny the Motion, although not for the reasons advanced by the Trustee. In

---

[1] This adversary proceeding, Adv. Pro. No. 06-3377 (the "Adversary Proceeding") was filed on May 16, 2006. The Court tried the claims raised in the Adversary Proceeding in January of 2009, with closing arguments held in February of 2009. On May 11, 2009, the Court entered its Memorandum Opinion, *see* Docket No. 582 (the "Memorandum Opinion"), and on July 13, 2009, the Court entered its "Final Judgment" (the "Final Judgment"). *See* Docket No. 608.

**Memorandum Opinion and Order Denying Motion to Vacate**            **Page 2**

short, this Court concludes that the Defendants' attack on the Final Judgment under Rule 60(b)(4)[2] cannot be used as a substitute for their failure to prosecute their timely-filed appeal from what they now contend was this Court's erroneous ruling on its subject matter jurisdiction over the claims asserted against them in the Adversary Proceeding.[3]

**FACTUAL AND PROCEDURAL BACKGROUND**

As noted previously, Heritage filed its Chapter 11 case on May 17, 2004. Dennis S. Faulkner was appointed as Chapter 11 trustee shortly after the case was filed. Prior to its bankruptcy filing, Heritage advised extremely high net worth individuals regarding estate planning, business planning, tax planning and asset planning. The information and strategies about which Heritage advised its clients were enormously complex and individualized. The primary strategy that became the focal point of Heritage's bankruptcy case was a version of an investment transaction involving § 752 of the Internal Revenue Code. Heritage "sold" this strategy to a number of very wealthy clients who: (i)

---

[2] Federal Rule of Civil Procedure 60 is made applicable to the Adversary Proceeding by virtue of Federal Rule of Bankruptcy Procedure 9024.

[3] As noted previously, the Trustee did not oppose the Motion on this ground. The Court did not originally intend to announce a ruling at the hearing, intending instead to write this opinion. However, also set for hearing on September 22, 2011 was the Defendants' motion for a stay of the Trustee's attempts to collect the Final Judgment in other courts pending this Court's ruling on the Motion. During the hearing on that motion for stay, Defendants' counsel argued that because the *Stern* issues being raised in the Motion were substantial ones, this Court should exercise its discretion and stay further collection activities on the Final Judgment pending its ruling on the Motion. However, because the Court had independently researched the issue and had come to the tentative conclusion that the Motion must be denied, it felt the need to explain why it would deny the requested stay. Counsel for the Defendants was not the least bit surprised by the Court's analysis regarding the Motion. In fact, counsel stated that he had expected the Trustee to oppose the Motion on this ground. And, when the Court commented that the Defendants' "collateral attack" on the Final Judgment was not legally appropriate under Fifth Circuit precedent, Defendants' counsel provided the Court with a case decided by Bankruptcy Judge Leif Clark of the Western District of Texas that had characterized the attack as a direct attack. *See In re Acorn Hotels*, LLC 251 B.R. 696 (Bankr. W.D. Tx. 2000). In this exchange, and for the first time, Defendants' counsel raised a new issue that he "noticed last night" when preparing for the hearing on the Motion – *i.e.*, that the Final Judgment may not be final because it may not have disposed of all pled claims in the Adversary Proceeding against all named defendants. He was unable to provide any specifics beyond this vague statement. The Court declines to address this hypothetical issue – it was neither raised in the Motion nor was Defendants' counsel prepared to address it any further than simply raising its specter.

**Memorandum Opinion and Order Denying Motion to Vacate**    Page 3

implemented it, (ii) were audited by the Internal Revenue Service, (iii) had the transaction disallowed, and (iv) were determined to owe not only the sheltered tax but penalties and interest on that tax to the United States Treasury. Many of these clients filed very large claims against Heritage in the bankruptcy case claiming, among other things, that they were defrauded by Heritage and, in particular, its principal Gary M. Kornman ("Kornman").

Heritage's bankruptcy case was an exceedingly difficult one, made more difficult by the conduct of Kornman and those persons and entities under his direction and control, including some of the Defendants.[4] Ultimately, the Chapter 11 Trustee proposed and obtained confirmation of the Plan (over the vehement objection of Kornman), pursuant to which the claims in this Adversary Proceeding that underlie the Final Judgment were transferred to the Creditors Trust for continued prosecution by Faulkner as the trustee of that trust. Within days of confirmation, the Trustee, Kornman and certain Kornman family members and entities he controlled (the "Kornman Parties") reached an agreement whereby the Kornman Parties agreed (1) to make a payment of $30,000 to the Trustee, (2) not to appeal the confirmation order, and (3) to file certain certifications regarding turnover of Heritage's assets to the Trustee. In return the Trustee agreed, if those things were done, to withdraw a motion pending in Heritage's bankruptcy case for contempt and sanctions against Heritage and GMK Family Holdings, Inc. *See* Docket Nos. 1285, 1288 and 1291 in Case No. 04-35574-BJH-11. Kornman did not appeal the order confirming the Plan, and on October 4, 2007, the Trustee withdrew the pending motion for contempt and sanctions. *See* Docket No. 1305 in Case No.

---

[4]This Court and other courts have written about the escapades of Kornman. *See, e.g.*, *Kornman & Assoc., Inc. v. U.S.*, 527 F.3d 443 (5th Cir. 2008); *Faulkner v. Kornman*, No. 10-301, 2011 WL 3503098 (Bankr. S.D. Tex. Aug. 8, 2011); *Lippe v. Faulkner*, No. H-10-3374, 2011 WL 31800 (S.D. Tex. Jan. 5, 2011); *In re Heritage Organization, L.L.C.*, No. 06-3377, 2010 WL 3516174 (Bankr. N.D. Tex. Sept. 3, 2010); *In re Heritage Organization L.L.C.*, 375 B.R. 230 (Bankr. N.D. Tex. 2007); *S.E.C. v. Kornman*, No. 3:04-CV-1803-L, 2006 WL 1506954 (N.D. Tex. May 31, 2006); *S.E.C. v. Kornman*, 391 F.Supp.2d 477 (N.D. Tex. 2005).

**Memorandum Opinion and Order Denying Motion to Vacate** **Page 4**

04-35574-BJH-11. The Plan went "effective" on September 25, 2007. *See* Docket No. 1298 in Case No. 04-35574-BJH-11.

As the earlier reference to the sanctions motion in the Heritage bankruptcy case suggests, the Adversary Proceeding did not proceed smoothly or expeditiously. Kornman and the other Defendants were obstreperous, refusing to comply with discovery requests. The Trustee, over the course of years, filed no fewer than 8 motions to compel discovery or for sanctions, all of which were contested, against Kornman or various other Defendants affiliated with him. *See* Docket Nos. 81, 95, 194, 230, 299, 301, 302 and 460. Kornman or his affiliates sought to stay the Adversary Proceeding, and sought multiple continuances of various hearings or trial. *See* Docket Nos. 108, 200, 213, 348, 513, 598. Kornman and/or his affiliates changed counsel several times prior to trial.[5] After numerous continuances and an admonition by the Court that the Adversary Proceeding would proceed to trial in September, 2008, on June 13, 2008 Kornman filed his "Motion for Trial by Jury and, Subject Thereto, Motion for Leave to Withdraw Claim Against Debtor and Motion for Continuance of Trial Date and Extension of Pre-Trial Deadlines, and Brief in Support," Docket No. 200, which was joined by the other Defendants. Docket Nos. 201, 239 (together, the "Motion for Jury Trial"). On June 30, 2008, Kornman filed a Supplement to his Motion for Jury Trial and sought to withdraw his proof of claim unconditionally. Docket No. 226.

On July 2, 2008, this Court held a hearing on the Motion for Jury Trial. At that hearing, the Court expressed its concerns about the impact on the bankruptcy system generally if proofs of claim

---

[5] The Defendants' answer was initially filed by Jeffrey Tillotson, Esq. Shortly thereafter, the firm of Crouch and Ramey, LLP began representing the Defendants, followed by Wick Phillips, LLP and Forshey & Prostok, LLP. Each of those firms has withdrawn from representation. Post-trial, to date, the Defendants have been represented by the Law Offices of Lippe & Associates, Pronske & Patel, P.C. and, most recently, by Owens, Clary & Aiken, LLP who filed the Motion.

**Memorandum Opinion and Order Denying Motion to Vacate**     **Page 5**

were allowed to be withdrawn shortly before trial in connection with a jury demand in order to prevent a bankruptcy court from conducting that trial. Specifically, this Court stated:

> My issue is over-arching. It's one that concerns me in the context of every other bankruptcy cases I have, or may have in the future. The policy implications of that are fairly significant to allow substantial gamesmanship with the bankruptcy process. And that's troubling to me from a policy perspective.

Docket No. 267, p. 23:18-24. At the conclusion of the hearing, the Court took the Motion for Jury Trial under advisement because the Defendants indicated that they would be filing a motion to withdraw the reference and the Court wanted to consider those issues together.

On July 3, 2008, the Defendants filed their Motion to Withdraw the Reference from the Bankruptcy Court and a brief in support of that motion. Docket Nos. 233 and 235. In that brief the Defendants stated:

> [w]hile the Trustee's fraudulent transfer claims may technically be classified as "core" under 28 U.S.C. § 157(b)(2)(H), they have certain non-core characteristics (such as being predicated in whole or in part on state law) that would raise *Marathon*[6] concerns if they were submitted to the adjudicatory jurisdiction of the bankruptcy court over the objection of [Defendants].

Docket No. 235 at ¶ 14. As it is required to do under Local Rule 5011-1, this Court scheduled a status conference on the Motion to Withdraw the Reference for July 31, 2008 so that it could make the required report and recommendation to the District Court with respect to that motion.

On July 30, 2008, all of the Defendants filed Notices of Withdrawal of their Motion for Jury Trial. Docket Nos. 292, 293, 294, and 295. At the scheduled status conference the next day, counsel

---

[6] Of course, this reference is to the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). In *Marathon,* a plurality of the Supreme Court concluded that bankruptcy judges serving under the Bankruptcy Act of 1978 and lacking the tenure and salary guarantees of Article III of the United States Constitution could not constitutionally be vested with jurisdiction to decide a state-law contract claim against an entity that was not otherwise part of the bankruptcy proceedings. Section 157 of title 28 of the United States Code, at issue in the *Stern* case, was Congress's response to the *Marathon* decision.

for the Defendants unequivocally consented to this Court conducting the trial of the Adversary Proceeding and entering a final judgment at the conclusion of that trial – on both core and non-core claims. Specifically, the transcript of that status conference reflects the following exchange:

> Court: Well, so let me -- let me see what the defendants' positions are. You've withdrawn the request for a jury trial, so you're waiving your right to a jury trial.
>
> Mr Forshey: That's what I'm instructed, yes. Mr. Kornman –
>
> Court: On behalf of -- who are you speaking? I take it, just Mr. Kornman and GMK?
>
> Mr. Forshey: Well, there's a list of all of the people on there on the pleadings.
>
> Court: All right.
>
> Mr. Forshey: And so we would be speaking in this case for those people that are listed on there.
>
> Court: All right.
>
> Mr. Forshey: There's probably a dozen, or 15 of them that are on there.
>
> Court: All right. So each of those entities, and you're authorized on behalf of each of those entities to waive a right to a jury trial?
>
> Mr. Forshey: Yes, ma'am. That's what I've been instructed to do.
>
> The Court: All right. Now, are each of those entities consenting to the entry of a final judgment by this Court?
>
> Mr. Forshey: I believe so. Let me confirm, though. May I, Your Honor?
>
> The Court: You may.
>
> Mr. Forshey: Yes, ma'am. I've confirmed that with Mr. Kornman and the answer to that is, yes.
>
> The Court: All right. On both core and non-core claims?
>
> Mr. Forshey: Yes. You're it.

*See* Tr. 7/31/08, 22:18 - 23:25 (Docket No. 351). Somewhat surprised by this turn of events, the

**Memorandum Opinion and Order Denying Motion to Vacate**  **Page 7**

Court asked counsel for the Defendants why the Motion for Jury Trial and the motion to withdraw the reference were being withdrawn. Counsel for the Defendants responded:

> After the motions were filed, Judge, and discovery got underway, including the deposition of the Trustee, the defendants became more and more of the mind that they can't prove their case. They don't have the evidence . . . . The more we looked at that, the more we started thinking about, do we really want a jury trial? Do we really want to ask that the reference be withdrawn?

Tr. 7/31/08, 21:3-13 (Docket No. 351).

The next day, on August 1, 2008, the Defendants filed their "Notice of (I) Waiver of Rights to Trial by Jury and (II) Consent to Entry of Final Orders and Judgment by Bankruptcy Court on All Matters" in which they stated:

> Further, each and every one of the Defendants hereby unconditionally consents to this Bankruptcy Court entering final orders and judgment with respect to any and all matters, both core and non-core, arising in this adversary proceeding.

Docket No. 306 at p. 2. On August 8, 2008, certain other defendants[7] filed the same "Notice of (I) Waiver of Rights to Trial by Jury and (II) consent to Entry of Final Orders and Judgment by Bankruptcy Court on All Matters" that contained the identical statement quoted above.

The Court proceeded to trial on the claims against the Defendants on January 7-16, 2009. Closing arguments occurred on February 26, 2009 and on May 11, 2009, this Court entered its 118-page Memorandum Opinion, which contained detailed findings of fact and conclusions of law with respect to the claims at issue between the Trustee and the Defendants. Docket No. 582. A dispute then erupted respecting the form of judgment and the Trustee's entitlement to prejudgment interest. The Trustee filed a motion for an award of such interest and a "Motion to Amend or Supplement

---

[7] Specifically, Kornman's sons Michael and Grant, his daughter-in-law Martha, and Heritage employee Claudia McElwee, none of whom joined in the Motion now before the Court.

Pre-Trial Order to Specify Claim for Award of Prejudgment Interest and Brief in Support." *See* Docket Nos. 584 and 596. Further hearings were held on June 3, 2009, June 23, 2009 and July 2, 2009, following which the Court ruled that the Trustee was indeed entitled to pre-judgment interest. Docket No. 613. On July 13, 2009, this Court's Final Judgment was entered. Docket No. 608. Ten days later, the Defendants filed "Motions for New Trial, or to Amend or Make Additional Findings of Fact, to Alter or Amend Judgment, or for Relief from Judgment and Supporting Brief," Docket No. 612, which the Trustee opposed.[8] The Court heard and denied that motion on August 27, 2009, and the order embodying that ruling was entered on September 1, 2009. *See* Docket No. 624.

On September 11, 2009, the Defendants filed their Notice of Appeal from the Final Judgment. *See* Docket No. 626. On October 1, 2009, the Trustee moved before the District Court seeking dismissal of the appeal as a sanction for the Defendants' failure to file a designation of items to be included in the appellate record and a statement of issues presented on appeal. *See* Docket No. 3 in Case No. 3:09-cv-01827-L. On November 12, 2009, the District Court entered its Order dismissing the appeal finding that "[a]fter Defendants' deadline to comply with Rule 8006 passed, their counsel sent an email stating that Defendants would withdraw the notice of appeal and that counsel would withdraw from the case. . . . Because Appellants do not wish to prosecute this appeal, the court hereby dismisses this bankruptcy appeal without prejudice. Accordingly, the court denies as moot the Trustee's Motion to Dismiss Appeal as Sanction." *See* Docket No. 10 in Case No. 3:09-cv-018270-L.

The Trustee issued Writs of Execution to the United States Marshal on October 16, 2009 but

---

[8] The Defendants filed, two days prior to the scheduled hearing on the Defendants' motion for new trial, a supplemental motion for new trial which the Trustee also opposed.

to date, the Trustee has recovered little on the Final Judgment. Extensive post-judgment discovery proceedings have occurred in this Adversary Proceeding. Further, extensive post-judgment collection activities have occurred in both the Southern District of Texas, where the Final Judgment was registered, and in various state courts.

As noted previously, the Motion was filed on August 9, 2011 and heard on September 22, 2011.

**LEGAL ANALYSIS**

Generally, if a judgment is void, the trial court that entered that judgment must grant relief from that judgment on motion made pursuant to Rule 60(b)(4). *Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir. 1998) ("When . . . the motion is based on a void judgment under rule 60(b)(4), the district court has no discretion, the judgment is either void or it is not") (*quoting Recreational Properties, Inc. v. Southwest Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986)).[9] Various circuit courts, however, including the Fifth Circuit, have cautioned that this general rule cannot be used as a substitute for a party's failure to timely appeal from an allegedly erroneous ruling on subject matter jurisdiction. For example, in *Picco v. Global Marine Drilling Co.*, 900 F.2d 846 (5th Cir. 1990), the Fifth Circuit was faced with an appeal from a district court's decision to set aside a prior dismissal order pursuant to a Rule 60(b) motion. In that case Picco sued Global Marine (and another

---

[9] As an initial matter, the Court notes that the Trustee asserts that the Motion must be denied as untimely. However, the Fifth Circuit has very clearly held that there is no time limit for motions which attack a prior judgment as void. *U.S. v. Aloysius*, 101 Fed. Appx. 947 (5th Cir. 2004); *Callon Petroleum v. Frontier Ins. Co.*, 351 F.3d 204, 208 n.3 (5th Cir. 2003) ("In this circuit, [Rule 60(b)(4) motions] need not even be made within a reasonable time"); *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) ("the fact that a [60(b)(4)] motion is made long after the entry of a default judgment should not be an obstacle to the jurisdictional inquiry" and "the mere passage of time cannot convert an absolutely void judgment into a valid one."); *Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998) (Rule 60(b)(4) motions "constitute such exceptional circumstances as to relieve litigants from the normal standards of timeliness associated with the rule"). The Court therefore concludes that the lengthy delay here does not bar the Motion.

defendant) in federal district court in the Eastern District of Texas. The defendants moved to dismiss on the ground of *forum non conveniens*. The district court denied the motion, which was then certified for appeal to the Fifth Circuit. While the interlocutory appeal was pending, Global Marine filed Chapter 11. The other defendant entered bankruptcy proceedings in Canada. The district court was advised of the bankruptcies and severed Picco's claim from other consolidated cases and suspended it pending a ruling on Picco's motion to lift the automatic stay. Before the stay was lifted, however, the district court dismissed the case, stating that the pending bankruptcy made it unnecessary to keep Picco's lawsuit on its docket and holding that American law did not apply to Picco's claim (Picco was a Canadian citizen who was injured on a Global Marine drilling rig moored in Canadian waters). For those reasons, the district court dismissed the lawsuit without prejudice on the ground of *forum non conveniens*. Picco filed no appeal from the dismissal, nor did he object to it being entered while the automatic stay was in effect.

Thereafter, the bankruptcy court presiding over Global Marine's case lifted the stay and Picco refiled his lawsuit against Global Marine (and the other defendant) in Canada. Picco eventually became dissatisfied with his progress in Canada. In light of developments in U.S. law regarding the effect of a federal *forum non conveniens* dismissal, Picco decided that he should have refiled his lawsuit in Texas state court rather than in Canada. However, by this time, the statute of limitations had run on his claims. So, Picco filed a Rule 60(b) motion before the district court that had dismissed his lawsuit, asking it to set aside its final judgment and redismiss the lawsuit with conditions that would allow him to refile in Texas state court not subject to limitations having run, which the district court did. Global Marine (and the other defendant) then appealed to the Fifth Circuit, which held that the district court had abused its discretion in granting Rule 60(b)(4) relief to Picco stating:

**Memorandum Opinion and Order Denying Motion to Vacate**                                                                                                 **Page 11**

> [a] court's determination of its own jurisdiction is subject to the principles of *res judicata*; it generally may not be challenged in a collateral proceeding. This bar applies whenever the party challenging the judgment has the opportunity to raise the jurisdictional issue but fails to do so. A number of decisions in other circuits have extended the principles of [the Supreme Court's decision in] *Chicot County* to the analogous context of Rule 60(b)(4) motions. We agree with this approach, at least where, as here, the challenging party was before the court when the order in question was entered and had notice of it and had a full and fair, unimpeded opportunity to challenge it, and the court's jurisdiction, by appeal. Therefore, Picco is now barred from challenging the district court's jurisdiction in a Rule 60(b)(4) proceeding.

*Id*. at 850 (citations omitted). The Fifth Circuit went on to explain that "[t]his is not a case in which there is a 'clear usurpation of power' or 'total want of jurisdicion' that might make Rule 60(b)(4) an appropriate avenue for challenge to the district court's determination of jurisdiction." *Id*. at n.6 (citations omitted).

The Fifth Circuit has continued to apply this analysis in other cases. *See, e.g., U.S. v. Hansard*, No. 07-30090, 2007 WL 2141950, * 1 (5th Cir. 2007) (unpublished disposition) ("Rule 60(b)(4) relief, however, is not available to Hansard. A district court's exercise of subject matter jurisdiction, even if erroneous, is *res judicata* and is not subject to collateral attack through Rule 60(b)(4) if the party seeking to void the judgment had the opportunity previously to challenge jurisdiction and failed to do so."); *United States v. Hall*, 183 Fed. Appx. 472, 473 (5th Cir. 2006) (unpublished disposition) ("A district court's erroneous exercise of subject matter jurisdiction is res judicata and is not subject to collateral attack by way of a Rule 60(b)(4) motion if the party seeking to void the judgment had the opportunity to do so on direct review of the court's determination. Hall failed to challenge the exercise of jurisdiction by appealing that issue at the time. He may not do so collaterally."); *Winograd v. Fowler*, No. 98-20660, 1999 WL 499565 at *2 (5th Cir. 1999) (unpublished disposition) ("It is firmly established that principles of *res judicata* apply to jurisdictional determinations, both subject matter and personal. *Res judicata* bars collateral attacks upon a

judgment where the challenging party had the opportunity to raise the issue of jurisdiction. *Res judicata* bars Rule 60(b)(4) motions where 'the challenging party was before the court when the order in question was entered and had notice of it and had a full and fair, unimpeded opportunity to challenge it, and the court's jurisdiction, by appeal. Thus, 'the question is not whether the issue of subject matter [jurisdiction] was actually litigated, but instead whether the parties had the opportunity to raise the question.' Accordingly, '[i]f the parties against whom judgment was rendered did not appeal, the judgment became final and the court's subject matter jurisdiction is insulated from collateral attack.' Nevertheless, Rule 60(b)(4) relief may be appropriate to challenge a district court's determination of jurisdiction where there is a 'clear usurpation of power' or 'total want of jurisdiction.'")(citations omitted); *Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1293 (5th Cir. 1992) ("If the parties against whom judgment was rendered did not appeal, the judgment becomes final and the court's subject matter jurisdiction is insulated from collateral attack").

Other circuit courts apply the same rule. *See, e.g., In re Optical Technologies, Inc.*, 425 F.3d 1294, 1306 (11th Cir. 2005) ("as a general matter, parties to a proceeding that do not raise jurisdictional objections are entirely barred from attacking jurisdiction collaterally" under Rule 60(b)(4)); *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1229 (8th Cir. 1997) ("If a party fails to appeal an adverse judgment and then files a Rule 60(b)(4) motion after the time permitted for an ordinary appeal has expired, the motion will not succeed merely because the same argument would have succeeded on appeal"); *Missouri Pacific R. Co. v. Cartwright Transfer & Storage, Inc.*, 968 F.2d 20 (10th Cir. 1992) (failure to timely appeal a lower court's finding of subject matter jurisdiction is fatal even if the court's ruling was erroneous); *In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992) ("Want

of subject matter jurisdiction is not waivable – until the loser has exhausted his appellate remedies, after which courts will not treat the judgment as void unless the jurisdictional error is egregious . . . if it is not egregious, the courts say that the court that issued the judgment in excess of its jurisdiction had jurisdiction to determine jurisdiction, and its jurisdictional finding, even if erroneous, is therefore good against collateral attack, like any other erroneous but final judgment"); *Nemaizer v. Baker,* 793 F.2d 58 (2d. Cir. 1986).

Here, the Defendants questioned this Court's subject matter jurisdiction over the claims asserted against them in the Adversary Proceeding. They demanded a jury trial and asked for leave to withdraw the proofs of claim that certain of them had filed in the Heritage bankruptcy case. Docket Nos. 200, 201 and 239. They then moved to withdraw the reference – raising *Marathon* (the precursor to *Stern*) concerns over the power of the bankruptcy court to adjudicate the claims against them. Docket Nos. 233 and 235. Significantly, the Defendants then decided to withdraw the Motion for Jury Trial and the motion to withdraw the reference, Docket Nos. 292, 293, 294, and 295, and, at a status conference on their motion to withdraw the reference, unequivocally consented, on the record, to this Court's entry of a final judgment on both core and non-core claims, having decided that the Trustee would not be able to prove his case against them at trial. Docket No. 351. And, the very next day, the Defendants filed their written Notice of (I) Waiver of Rights to Trial by Jury and (II) Consent to Entry of Final Orders and Judgment By Bankruptcy Court On All Matters. Docket No. 306.

This Court, in reliance upon that oral and written consent, proceeded to trial and, following the issuance of a detailed Memorandum Opinion, entered a Final Judgment disposing of the Trustee's claims against the Defendants. The Defendants moved for a new trial, which this Court denied. The

Defendants then appealed the Final Judgment, but thereafter notified the District Court that they no longer wished to pursue the appeal, following which the District Court dismissed the appeal. *See* Docket No. 9 in Case No. 3:09-cv-01827-L ("Since the filing of the Amended Notice of Appeal, counsel has again confirmed that the Defendants do not wish to pursue any appeal, either through the undersigned counsel, or through substitute counsel, because they are unable to pay the expenses of an appeal in such a complex and involved case, and because the corporate parties are unable to proceed in this case without retention of counsel . . . Appellants do not oppose dismissal of the appeal because of their inability to prosecute the appeal."). Some two years later, after extensive post-judgment collection activities by the Trustee, the Defendants filed the Motion seeking to attack the Final Judgment as void under Rule 60(b)(4).

Under these circumstances, even assuming there is a *Stern* problem here, this Court's exercise of jurisdiction over the claims asserted against the Defendants in the Adversary Proceeding was neither a "clear usurpation of power" or so glaring as to constitute a "total want of jurisdiction," *Picco*, 900 F.2d at 850, n.6, nor "egregious . . . , where the court wrongfully extends its jurisdiction beyond the scope of its authority." *Edwards*, 962 F.2d at 644. The Defendants consented to this Court's exercise of jurisdiction and entry of a final judgment, had the opportunity to appeal if they changed their mind, did in fact appeal from the Final Judgment, and then agreed to the dismissal of that appeal. Whether characterized as a direct attack on the Final Judgment, *see In re Acorn Hotels, LLC*, 251 B.R. 696 (Bankr. W.D. Tex. 2000),[10] or a collateral attack on the Final Judgment as in

---

[10] The *Acorn Hotels* court concluded that a Rule 60(b)(4) motion made in the same case in which the challenged order was entered is a direct, as opposed to a collateral, attack, and therefore is not barred by *res judicata*. The Court notes, however, that assuming *Acorn Hotels* was correctly decided, even the *Acorn Hotels* court noted that a Rule 60(b)(4) motion cannot be used as a substitute for a timely appeal from an erroneous ruling on subject matter jurisdiction, and will justify relief from a judgment as "void" only when a court's asserted lack of subject matter jurisdiction was 'so glaring as to constitute a total want of jurisdiction" or constitutes a "plain

*Picco*, the Defendants are not entitled to Rule 60(b)(4) relief from the Final Judgment.[11]

For these reasons, the Motion is denied.

**SO ORDERED**.

---

usurpation of power," and a judgment is not *void* for lack of subject matter jurisdiction unless "no arguable basis" for jurisdiction existed in the first place. *Acorn Hotels*, 251 B.R. at 702. Here, the Court clearly had statutory jurisdiction to entertain the claims which resulted in the Final Judgment. The *Stern* decision, which allegedly calls into question this Court's constitutional authority to have entered the Final Judgment notwithstanding the clear grant of statutory jurisdiction, was not decided for another two years after entry of judgment. In these circumstances, the Court declines to conclude that it lacked any arguable basis for jurisdiction, such that the Final Judgment is void, even assuming that the Defendants' challenge is a direct attack and not barred by *res judicata*. The Supreme Court has recently mentioned two examples in which a bankruptcy court may plainly exceed its jurisdiction: where a bankruptcy court decides to conduct a criminal trial or to resolve a custody dispute. *Travelers Indem. Co. v. Bailey*, 129 S.Ct. 2195, 2206 n. 6 (2009). Clearly, this case resembles neither of those.

Moreover, the Court notes that the Fifth Circuit, in several of its decisions (albeit unpublished decisions) has applied the *res judicata* principles to bar a Rule 60(b)(4) motion even when it is made in the same action in which the challenged judgment was entered. *See, e.g.*, *U.S. v. Hansard*, No. 07-30090, 2007 WL 2141950 (5th Cir. July 26, 2007) (holding that Rule 60(b)(4) relief was not available in the same court in which the challenged judgment was entered).

[11] In a somewhat analogous context, the Fifth Circuit has rejected the availability of Rule 60(b)(4) relief where an intervening decision has rendered the trial court's exercise of jurisdiction unconstitutional. In *U.S. v. Hall*, 183 Fed. Appx. 472 (5th Cir. 2006) (unpublished disposition), a prisoner moved before the district court under Rule 60(b)(4) to set aside an order of a magistrate judge, which order had denied the prisoner's motion under 28 U.S.C. § 2255 to attack his sentence. *After* the magistrate's denial of the prisoner's motion, the Fifth Circuit held in *U.S. v. Johnston*, 258 F.3d 361 (5th Cir. 2001) that referral of a motion under 28 U.S.C. § 2255 to a magistrate violated Article III of the U.S. Constitution. The prisoner therefore argued in district court that the magistrate lacked subject matter jurisdiction within the meaning of Rule 60(b)(4) to enter the order denying his § 2255 motion. The district court denied the prisoner's Rule 60 motion, and the prisoner appealed. The Fifth Circuit held that Rule 60(b)(4) relief was unavailable for two reasons: first, because the prisoner had failed to challenge the magistrate's exercise of jurisdiction by direct appeal, and second, because *Johnston* was not decided at the time of the magistrate's order and thus the jurisdictional question was not evident or settled prior to *Johnston*, so "this case does not involve a clear usurpation of power or total want of jurisdiction that would warrant Rule 60(b)(4) relief." *Hall*, 183 Fed. Appx. at 473.

The Court also notes that the Fifth Circuit has held that a new rule of law announced by the United States Supreme Court, even if the Supreme Court has indicated it should be applied retroactively, is not to be applied retroactively to cases in which a final judgment has already been entered. *U.S. v. Approximately 478.91 Acres*, 43 F.3d 670 (5th Cir. 1994) (unpublished disposition) (citing *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991)). In that case, the Fifth Circuit held that the district court did not abuse its discretion in refusing to set aside under Rule 60(b)(4) a judgment which the defendant contended was void because the lower court had violated due process, where the Supreme Court's decision stating that the type of seizure involved there violated due process was entered two years after the challenged order of seizure. *See U.S. ex rel. Garibaldi v. Orleans Parish School Bd.*, 397 F.3d 334, 339 n. 27 (5th Cir. 2005) ("generally speaking, final civil judgments having the effect of res judicata, even if un-executed, are not voided or affected by a subsequent change in the decisional law on which they were based").

**Memorandum Opinion and Order Denying Motion to Vacate**                                                                  Page 16

### End of Memorandum Opinion and Order ###