

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*Barbara J. Houser*

**United States Bankruptcy Judge**

**Signed January 18, 2012**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE HERITAGE ORGANIZATION, | § | CASE NO. 04-35574-BJH-11 |
| L.L.C., | § | |
| | § | |
| Debtor. | § | |
| | § | |
| DENNIS FAULKNER, TRUSTEE, | § | |
| Plaintiff, | § | |
| | § | ADV. PRO. NO. 06-3377-BJH |
| - against - | § | |
| | § | |
| GARY M. KORNMAN, et al., | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

        This adversary proceeding has an extensive procedural and substantive history, little of which

bears repeating as it has been set forth at length in several prior Memorandum Opinions, *see* Docket

Nos. 83, 480, 582, 738 and 806, and in the pleadings underlying over eighty motions that have been

**Memorandum Opinion and Order**

filed either by the plaintiff or by whom the Court has come to refer to in its prior opinions as the "Kornman Defendants" or the "Judgment Debtors."[1]  Briefly, on May 11, 2009, this Court entered its Memorandum Opinion after trial on the merits of the claims filed by Dennis Faulkner (the "Trustee") in the above-captioned adversary proceeding (the "2009 Memorandum Opinion").  After a subsequent dispute about the Trustee's entitlement to pre-judgment interest was resolved, this Court entered, on July 13, 2009, what was styled and titled as a "Final Judgment" (the "Judgment") against certain of the defendants, all of whom are affiliated in some fashion with Gary Kornman ("Kornman") (those entities will be referred to here as the "Judgment Defendants").[2]  The Judgment awarded the Trustee a substantial monetary recovery against the Judgment Defendants, which they have been fighting ever since and which the Trustee has been trying (without much success) to collect ever since.

Specifically, ten days after entry of the Judgment, the Judgment Defendants filed "Defendants' Motions for New Trial, or to Amend or Make Additional Findings of Fact, to Alter or Amend Judgment, or for Relief from Judgment, and Supporting Brief."  *See* Docket No. 612.  On August 25, 2009, the Judgment Defendants filed "Defendants' Supplemental Motion for New Trial, or for Relief From Judgment, and Supporting Brief."  *See* Docket No. 620.  Both of those motions relied

---

[1] This number does not include motions to withdraw by the various attorneys who have represented the defendants or motions for expedited hearings on many of the underlying motions. It also bears noting that this adversary is one of twenty-eight spawned as a result of the bankruptcy filing by The Heritage Organization, Inc. ("Heritage") in 2004.  This adversary proceeding is the last vestige *in this Court* of the Heritage bankruptcy case.  The United States District Court for the Northern District of Texas withdrew the reference with respect to one adversary proceeding which had been pending in this Court; it appears that the District Court action is still pending.  *See* Civ. Action No. 3:07-cv-0321-F.

[2] The Trustee asserts, and the Judgment Defendants do not dispute, that a dispute erupted over the proper form of judgment.  After hearing both sides' arguments and after hearing a motion by the Trustee to amend the pre-trial order to include a request for pre-judgment interest, the Court ultimately entered the form of judgment submitted by counsel for the Judgment Defendants.  *See* Transcript of hearing held July 2, 2009, at p. 15, line 1 (Docket No. 613). The Judgment Defendants themselves therefore titled the judgment as a "Final Judgment."

upon, *inter alia*, Federal Rule of Civil Procedure 60(b), and both were ultimately denied.  *See* Docket No. 624.  On September 11, 2009, the Judgment Defendants filed a notice of appeal, which stated that they were appealing "the Final Judgment entered on July 13, 2009."[3]  *See* Docket No. 626.  On May 27, 2010, the Judgment Defendants filed an "Emergency Motion and Supporting Brief for Order Requiring Clients [sic] with Notice and Due Process Requirement," *see* Docket No. 708, in which they alleged that this Court had "signed and entered its Final Judgment dated July 13, 2010.  Such Final Judgment has not been appealed and is therefore valid and subsisting."  Docket No. 708, ¶ 1.  The Judgment Defendants asserted that the Trustee had improperly commenced enforcement proceedings in the United States Bankruptcy Court for the Southern District of Texas and certain pleadings had been improperly sealed, and thus the Judgment Defendants asked this Court for certain relief.[4]  That motion was thereafter withdrawn.  *See* Docket No. 710.  On August 8, 2011, the Judgment Defendants filed "Certain Defendants' Motion to Vacate Final Judgment Pursuant to Fed. R. Civ. P. 60(b)(4) and Fed. R. Bankr. P. 9024."  *See* Docket No. 790 (the "*Stern* Motion").

None of the foregoing pleadings filed by the Judgment Defendants assert that the Judgment, which was drafted by their attorney and titled "Final Judgment," is  not, and never was, final.  In fact, the pleadings which do not expressly concede the Judgment's finality rely upon its finality implicitly, either by virtue of an appeal or a citation to Fed. R. Civ. Pro. 60(b) which, by its terms, applies only to final judgments.  The Judgment Defendants' recent *Stern* Motion asserted that the Judgment is

---

[3] The Judgment Defendants notified the United States District Court for the Northern District of Texas that they no longer wished to prosecute their appeal, and the appeal was dismissed by order entered on November 12, 2009.

[4] The Judgment Defendants asked this Court to "order that counsel for Plaintiff cease and desist from any further actions in the Houston Miscellaneous proceeding except insofar as such proceedings relate to property actually located within the Southern District of Texas, that true, correct, and complete copies of all materials submitted to the Houston Court, all correspondence and communications with the Houston Court, and all materials received as a result of communications with the Houston Court, be served on counsel for Defendants immediately."  *See* Docket No. 708.

void and must be vacated on the ground that this Court lacked Constitutional authority to enter it under the recent decision of the United States Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  The *Stern* Motion itself relied upon Rule 60(b).

On the morning of the hearing on the *Stern* Motion, Judgment Defendants' current counsel concocted a clever concept – and raised for the first time an issue that he "noticed last night" when preparing for the hearing – *i.e.*, that the Judgment may not be final because it may not have disposed of all pled claims in the adversary proceeding against all named defendants.  At that hearing, he was unable to provide any specifics beyond this vague statement.   Therefore, the Court declined to address what it characterized as a hypothetical issue because it was neither raised in the *Stern* Motion nor was the Judgment Defendants' counsel prepared to address it any further than simply raising its specter.

On October 3, 2011, this Court entered its Memorandum Opinion and Order (the "October Opinion") denying the *Stern* Motion filed under Rule 60(b)(4).  This Court held, for the reasons set forth therein, that its prior determination of jurisdiction was *res judicata* such that the Judgment Defendants could not challenge it on *Stern* grounds by way of a motion under Rule 60(b)(4) where the Court's prior Judgment was not a "clear usurpation of power" or rendered notwithstanding a "total want of jurisdiction."  *Faulkner v. Kornman (In re The Heritage Organization, L.L.C.)*, 459 B.R. 911 (Bankr. N.D. Tex. 2011).[5]

---

[5] The Judgment Defendants, in a footnote to their brief in support of the present motion, assert that since the Trustee did not argue *res judicata* or assert that the Judgment Defendants had launched an impermissible collateral attack on the Judgment, the issue was waived and the Court should not have raised the issue *sua sponte*.  *See Moving Defs.' Br. In Supp. Of their Mot.to Amend or Modify the Court's Mem. Op. And Order Denying their Mot. To Vacate*, ("Judgment Defs.' Br."), p. 1, n.1.  To the extent that the Court raised the issue *sua sponte*, the Judgment Defendants were given the opportunity to respond.  At the hearing on the *Stern* Motion, the following colloquy took place:

Court:    [F]or reasons no one cited me to, I don't think I get to the merits of whether I had

Undaunted, the Judgment Defendants have now filed several motions. First, the Judgment Defendants have filed a Motion to Amend or Modify the Court's Memorandum Opinion and Order Denying their Motion to Vacate" pursuant to Fed. R. Civ. P. 52 (the "Motion for Amended Findings"). *See* Docket No. 810. In essence, the Judgment Defendants argue that the Judgment is not, and has never been, "final" and thus the Court's analysis in its October Opinion was flawed as such finality is a necessary predicate to the application of the doctrine of *res judicata* or claim preclusion. The Judgment Defendants ask this Court to amend its October Opinion and expressly find that

---

> jurisdiction under *Stern* or didn't have jurisdiction under *Stern* to try this case. I think that the Fifth Circuit has made it clear, as have courts in other circuits, including the Seventh, that under these kinds of circumstances, you don't come in and collaterally attack a judgment like this.
> Mr. Clary: Your Honor, may I respond?
> The Court: Please.

*Tr.* Hearing held 9/22/11, 44:2-10 (Docket No. 808).

> Counsel for the Judgment Defendants then conceded that he had anticipated the argument:

> Mr. Clary: Your Honor, as you noted, nobody's briefed that. And there's a reason for that. The trustee – I expected the trustee to make that argument, and the trustee didn't.
> The Court: So did I.

*Id.* at 44:11-15 (Docket No. 808).

> Counsel for the Judgment Defendants then responded to the *res judicata* issue on its merits:

> Mr. Clary: And had the trustee made that argument, my response would have been: Number one, I don't think this is a collateral attack. A 60(b)(4) motion – and Judge Clark in San Antonio has written on this expressly, I have the citation where he said a 60(b)(4) attack on a judgment is not – is not a collateral attack.

*Id.* at 44:16-22 (Docket No. 808).

> Counsel for the Judgment Defendants provided the Court with Judge Clark's decision. While the Court ultimately disagreed with the Judgment Defendants' position, any error here in raising an issue the that Trustee had not raised was harmless. Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial . . or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

**Memorandum Opinion and Order**                                                                 **5**

(i) no final judgment has been entered in the above-captioned matter; (ii) the "Final Judgment" entered by the Court on July 13, 2009 is not a final judgment; (iii) *Stern* is fully applicable to the jurisdictional analysis that must be applied to this case; and (iv) under Article III of the Constitution of the United States, as interpreted by the Supreme Court in *Stern*, this Court has no subject matter jurisdiction to adjudicate the claims that it purported to adjudicate in the proceedings that culminated in its entry of the "Final Judgment" on July 13, 2009.

*Motion for Amended Findings*, p. 4. The Judgment Defendants further request that after making these findings, the Court amend its October Opinion to vacate the Judgment and its 2009 Memorandum Opinion containing the findings and conclusions supporting the Judgment.

Second, the Judgment Defendants have filed an "Emergency Motion to Stay Enforcement of Alleged 'Final Judgment' and Brief in Support Thereof" (the "Stay Motion"). *See* Docket No. 814. The Judgment Defendants argue that the Judgment is not final, and therefore the Trustee's registration of the Judgment in the Southern District of Texas was improper, and his efforts to enforce the Judgment violate due process under the 14th Amendment to the United States Constitution and should be stayed pending this Court's disposition of the Motion for Amended Findings.[6]

Third, the Judgment Defendants have filed a "Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure and Rule 7012(b) of the Federal Rules of Bankruptcy Procedure" (the "Dismissal Motion"). *See* Docket No. 818. The Judgment Defendants assert that the Trustee's claims in this adversary proceeding are "private right claims that must be adjudicated by a court established pursuant to Article III of the Constitution of the United States" under *Stern*, *see Dismissal Motion*, p. 2, and this Court accordingly lacks subject matter jurisdiction

---

[6] At the time they filed the *Stern* Motion, the Judgment Defendants made a similar motion seeking to stay the enforcement of the Judgment, which this Court denied.

to adjudicate such claims and enter a final judgment.  They further assert that since no final judgment has been entered, this Court retains jurisdiction to determine its jurisdiction, and they ask that this Court enter an order dismissing the adversary proceeding for lack of subject matter jurisdiction.

The Trustee has opposed all three motions.  The Court heard the motions on November 22, 2011 and took them under advisement.

I.       LEGAL ANALYSIS

A.       *The Motion for Amended Findings*

The Judgment Defendants argue the Judgment was not, in fact, a final judgment because the record shows that (i) all of the claims against all of the parties were not finally disposed of, (ii) there was no order of severance respecting the Court's separate rulings as to claims against individual defendants, and (iii) there was never any certification under Fed. Civ. P. 54(b) rendering any ruling of the Court a final judgment.  As the Fifth Circuit has noted, the purpose of a motion for amended or additional findings under Rule 52(b) is to correct manifest errors of law or fact – "that is not to say, however, that a motion to amend should be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits."  *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986).

The Court will address the disposition of claims argument first, because only if the Judgment did *not* dispose of all claims against all parties need the Court address the requirement of an order of severance or the parties' arguments under Rule 54.  The Court will address the Judgment Defendants' arguments regarding the disposition of claims against various other defendants in turn.

(i)       *The Oak Group, L.P. (the "Oak Group")*

First, the Judgment Defendants argue that although the Trustee originally named the Oak

Group as a defendant, any claims against the Oak Group were never disposed of by an order of the Court or by the Judgment; nor was the Oak Group mentioned in the pre-trial order or the parties' stipulation, entered on the docket on December 18, 2008, which described the claims remaining for trial.

Some background will be helpful to the Court's analysis of this argument. The Trustee's original complaint, filed on May 16, 2006, named the Oak Group as a defendant. Similarly, the Trustee's first amended complaint, filed on October 16, 2006, named the Oak Group as a defendant. Thereafter, the Trustee settled with or dismissed claims against certain parties and the Court ruled on the admissibility of certain expert reports – both of which effectively narrowed the claims for trial. At a September 10, 2008 hearing, the Court directed the parties to confer regarding the claims in the case that remained for trial. On September 22, 2008, the parties filed a "Joint Status Report" which advised the Court which claims they believed remained for determination. *See* Docket No. 437. At hearings in November, 2008, the Court directed the Trustee to provide a copy of a proposed second amended complaint which would then, if an agreement could be reached, become the operative complaint upon which the parties would go to trial. The Trustee did not timely do so, and therefore on December 8, 2008, counsel for certain of the defendants filed a motion to compel the Trustee to provide them with the proposed second amended complaint and to confer to finalize an agreed trial scheduling order. *See* Docket No. 469. In response, the Trustee filed "Trustee's Amended Motion for Leave to File Second Amended Adversary Complaint, and Brief in Support" ("Amended Motion for Leave"). *See* Docket No. 473. The Amended Motion for Leave noted:

> Attached hereto as Exhibit A is the Trustee's proposed Second Amended Adversary Complaint. The Second Amended Adversary Complaint is generally similar to the First Amended Adversary Complaint. However, it revises, eliminates and/or consolidates certain claims and causes of action. There are also more specific factual

allegations in accordance with the facts learned in the discovery process. For example, the Sixth Cause of Action alleging breaches of fiduciary and other duties now includes closely related allegations of aiding and abetting breaches of such duties.

Further, the Second Amended Adversary Complaint does the following:
A. Eliminates all claims against former defendants who have been dismissed from this proceeding after settlements approved by the Court;
B. Eliminates all claims against Defendant The Oak Group, Ltd.;
C. Eliminates causes of action for damages to Heritage creditors related to deepening insolvency; for civil conspiracy; and for constructive fraud;
D. Substantially narrows and makes more specific the fraudulent transfer claims; and
E. Eliminates claims related to the payments made by Heritage to various Defendants pursuant to covenants not to compete.

* * *

The Trustee believes that he could make the modifications to his claims set forth in the proposed Second Amended Adversary Complaint in connection with the upcoming Pretrial Order in this case, and this would effectively amend his pleadings without the necessity of any formal amendment. However, the Trustee seeks leave to file his Second Amended Adversary Complaint now so as to make clear to the Court and opposing parties the claims that the Trustee intends to take to trial.

*Amended Motion for Leave*, ¶¶ 4, 5 and 7.  The defendants opposed the Amended Motion for Leave, but only to the extent that the Trustee sought to add a new claim for aiding and abetting breaches of fiduciary duties; the defendants did not otherwise oppose the Amended Motion for Leave.  *See* Docket No. 475.  Before the Amended Motion for Leave was heard, this Court issued its Memorandum Opinion and Order with respect to certain summary judgment motions, *see* Docket No. 480, which further narrowed the claims remaining for trial.

On December 18, 2008, the parties filed an "Agreed Stipulation Regarding Second Amended Complaint and Claims Remaining for Trial" (the "Stipulation"), *see* Docket. No. 486, which the Court "So Ordered" on December 18, 2008.  *See* Docket No. 488.  By that Stipulation, the parties agreed that the Trustee's Amended Motion for Leave should be granted; the parties further stipulated as to which claims remained for trial.  Then-counsel for the Judgment Defendants signed that Stipulation. Pursuant to that Stipulation, the Trustee filed his second amended complaint on December 22, 2008

(the "Second Amended Complaint"). *See* Docket No. 493.

Consistent with the Trustee's Amended Motion for Leave and the parties' Stipulation that the Amended Motion for Leave should be granted, and consistent with the parties' Stipulation respecting the claims remaining for trial, the Second Amended Complaint no longer named the Oak Group as a defendant.

Having stipulated to the Trustee's abandonment of any claims against the Oak Group, which Stipulation was approved by the Court, the Judgment Defendants will not now be heard to complain that the Judgment lacked finality because it failed to dispose of claims against the Oak Group – which claims were clearly abandoned with their express consent.[7]

Moreover, it is well-settled that an amended complaint "supercedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 246 n. 2 (5th Cir. 2010) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)); *Ross v. Hutchins Police Dept.*, No. 3:09-CV-0168-M, 2009 WL 1514364 (N.D. Tex. May 29, 2009). Here, the Second Amended Complaint did *not* refer to, adopt, or incorporate either the original complaint or the first amended complaint. *See Second Amended Compl.*, Docket No. 493. Accordingly, the original and first amended complaints were superceded and rendered void of legal effect upon the filing of the

---

[7] The Trustee's opposition to the Motion for Amended Findings notes that the Second Amended Complaint asserts no claims against the Oak Group. The Judgment Defendants' reply makes no further mention of the claims against the Oak Group and appears to abandon any argument that the Judgment lacked finality because it failed to dispose of claims against that entity. In fact, the Motion for Amended Findings concedes that the stipulation is "some indication" that claims against the Oak Group were abandoned, but simply notes that "we have not found any case allowing *sub silencio* abandonment of an entire party (as distinguished from certain claims against a party)." *Motion for Amended Findings*, p. 7, n. 6. Here, as noted, the abandonment was express – not *sub silencio* – and was done with the Judgment Defendants' consent. The Judgment Defendants have not cited any case law to the Court which compels a plaintiff to proceed to trial on claims it no longer wishes to pursue or which requires a Court to enter Judgment on such claims.

**Memorandum Opinion and Order**                                                                    **10**

Second Amended Complaint. The Second Amended Complaint contained no claims against the Oak Group, and thus the Judgment after trial of the causes of action in the Second Amended Complaint is not deprived of finality by its failure to address non-existent claims against the Oak Group. *Vaughn v. Mobil Oil Exploration and Producing Southeast, Inc.*, 891 F.2d 1195, 1198 (5th Cir. 1990) ("Rule 54 does not reach out to preserve claims that the parties do not actively pursue . . . an order that effectively ends the litigation on the merits is an appealable final judgment even if the district court does not formally include judgment on a claim that has been abandoned") (*quoting Jones v. Celotex Corp.*, 867 F.2d 1503, 1503-04 (5th Cir. 1989)).

(ii) *Claims against Michael, Grant and Martha Kornman and Claudia McElwee (the "McElwee Defendants")*

The Judgment Defendants next argue that the Judgment is not final because the Trustee's claims against the McElwee Defendants were never finally adjudicated. The Trustee settled his claims against the McElwee Defendants pursuant to a settlement agreement (the "McElwee Settlement Agreement") which this Court approved by order entered on November 17, 2008. *See* Docket No. 1383 in Case No. 04-35574-BJH. The Judgment Defendants point out that pursuant to the McElwee Settlement Agreement, the McElwee Defendants were to pay $90,000.00 to the Trustee, and "[e]ffective subject to and upon payment" of that amount, the Trustee released the McElwee Defendants as provided in the McElwee Settlement Agreement. *See* Docket No. 1367 in Case No. 04-35574-BJH, Ex. A. The Judgment Defendants further point out that the McElwee Settlement Agreement stated: "Promptly after receipt of the Settlement Payment, the Trustee shall cause the filing of a motion and order for dismissal with prejudice of all claims asserted in the Lawsuit and in the Subordination Proceeding against the Settling Defendants, and the Settling Defendants who have filed Proofs of Claim shall cause the filing of a Notice of Withdrawals [sic] of each such Proofs [sic]

of Claim, evidencing their irrevocable withdrawal of each such Proof of Claim." *See* Docket No.
1367 in Case No. 04-35574-BJH, Ex. A.  The Judgment Defendants lastly point out that the docket
reflects that the Trustee never moved to dismiss any of his claims against the McElwee Defendants,
and therefore argue that the Judgment is not final because the Trustee's claims against the McElwee
Defendants were never adjudicated, as there is no order, stipulation of dismissal or other indication
in the record that the claims against the McElwee Defendants were ever dismissed.[8]

    In response, the Trustee argues that with the consent of the Judgment Defendants as noted
above, the Trustee filed his Second Amended Complaint, which did not name the McElwee
Defendants as defendants.  He therefore argues that all claims against them were "otherwise resolved
or abandoned, since the Final Pre-Trial Order and Second Amended Complaint superseded all prior
pleadings." *Trustee's Br. In Supp. Of Opp. To Defs' Mot. To Amend or Modify the Court's Mem.
Op. And Order Denying their Mot. To Vacate* ("Trustee's Br."),  p. 13.

    The Judgment Defendants reply with several arguments.  They assert, citing *Exxon Corp. v.
Maryland Cas. Co.*, 599 F.2d 659 (5th Cir. 1979) and *Klay v. United Healthgroup, Inc.*, 376 F.3d
1092 (11th Cir. 2004), that when a plaintiff seeks to dismiss all claims against one of several
defendants, the plaintiff must comply with Fed. R. Civ. P. 41(a).[9]  They assert that the filing of the
Second Amended Complaint did not comply with the requirements of Rule 41, because the McElwee
Defendants, who had each filed an answer, were not parties to the Stipulation which permitted the
Trustee to file the Second Amended Complaint and thus did not consent to such dismissal; in fact,

---

[8] The Trustee does not dispute, and the record establishes, that the Trustee never "cause[d] the filing of a motion and order for dismissal with prejudice of all claims" against the McElwee Defendants.  Regrettably, this is not the first time that the Trustee's counsel has failed to do what he has undertaken to do, or failed to take care in complying with procedural rules, thus creating unnecessarily complicated legal issues.

[9] Fed. R. Civ. P. 41 is applicable here by virtue of Fed. R. Bankr. P. 7041.

according to the Judgment Defendants, the McElwee Defendants were not even served with either the Trustee's Amended Motion for Leave or with the Stipulation. The Judgment Defendants further assert that in the absence of the McElwee Defendants' consent, dismissal of the claims against them had to be by court order under Rule 41(a)(2). The Judgment Defendants also point out that the order approving the Stipulation did not dismiss any claims, and it cannot be viewed as tantamount to such a dismissal, because under the McElwee Settlement Agreement, the Trustee agreed to dismiss the claims against the McElwee Defendants "with prejudice," yet a dismissal under either Rule 41 *or* by virtue of an amendment under Fed. R. Civ. P. 15 operates without prejudice unless the Court orders otherwise. Therefore, the Judgment Defendants assert that if this Court's approval of the Stipulation permitting the Trustee to file his Second Amended Complaint is viewed as the functional equivalent of an order dismissing the claims against the McElwee Defendants, then the Trustee failed to comply with the McElwee Settlement Agreement, which required dismissal with prejudice. Instead, the Judgment Defendants assert that the grant of the Amended Motion for Leave was, in reality, a motion for a separate trial of the "remaining" claims under Fed. R. Civ. P. 42 -- and the claims against the McElwee Defendants were therefore never dismissed, never abandoned, and "remain to be adjudicated." *See Moving Defs' Reply to Trustee's Opp. To Defs.' Mot. To Amend or Modify the Court's Mem. Op. And Order Denying their Mot. To Vacate* ("Judgment Defs.' Reply"), p. 10.

The Federal Rules of Civil Procedure relevant to these issues are Rules 15 and 41.[10] Rule 41(a) provides:

> (a) Voluntary Dismissal.
>> (1) By the Plaintiff.
>>> (A) Without a Court Order. Subject to Rules 23(e),

---

[10] Fed. R. Civ. P. 15 is applicable here by virtue of Fed. R. Bankr. P. 7015.

23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
> (ii) a stipulation of dismissal signed by all parties who have appeared.

(B) *Effect.* Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal-or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

(2) By Court Order; Effect. Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Rule 15(a) provides:

(a) Amendments Before Trial.

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:

>> (A) 21 days after serving it, or
>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Here, it is undisputed that after the Court approved the McElwee Settlement Agreement, the

Trustee never filed a motion to dismiss the McElwee Defendants under Rule 41, as he had undertaken

to do in that agreement. Instead, the Trustee filed the Second Amended Complaint which dropped

all claims against the McElwee Defendants.[11]

The Judgment Defendants assert that this procedural mis-step is fatal to the Judgment's finality. The Court disagrees for the following reasons.

Numerous courts have considered the interplay between Rules 15 and 41. Neither of the cases cited by the Judgment Defendants, however, stand precisely for the proposition for which they are cited – that is, that when a plaintiff seeks to dismiss all claims against one of several defendants, that plaintiff *must* file a motion under Rule 41. In *Exxon Corp. v. Maryland Cas. Co.*, 599 F.2d 659 (5th Cir. 1979), the Fifth Circuit had before it a lawsuit by Exxon Corporation ("Exxon") against the surety ("Maryland Casualty") of one of its customers with unpaid bills, seeking to hold Maryland Casualty liable for those bills through two separate claims: the first under a quasi-contract theory, and the second on a contractual theory based on performance bonds Maryland Casualty had issued. Maryland Casualty filed a motion to dismiss both claims for failure to state a claim, but withdrew the motion as it related to the contractual (second) claim before the motion was heard. The lower court heard and granted Maryland Casualty's motion as it related to the first claim. Exxon sought a Rule 54(b) certification so it could appeal, but the lower court denied that motion. Exxon then moved for reconsideration of both rulings, which the lower court also denied. Exxon then voluntarily dismissed its contractual (second) claim against Maryland Casualty under Rule 41(a)(1)(A)(i), and filed a notice of appeal from the lower court's denial of reconsideration. Maryland Casualty defended the appeal at the Fifth Circuit by moving to dismiss the appeal as premature, arguing that Rule 41 didn't permit

---

[11] The Court agrees with the Judgment Defendants that the Trustee apparently simply assumed that the claims had already been dismissed. *See* Amended Motion for Leave, p. 2. (noting that the Second Amended Complaint "eliminates all claims against former defendants who have been dismissed from this proceeding after settlements approved by the Court").

Exxon to unilaterally dismiss Exxon's contractual (second) claim after Maryland Casualty had filed its motion to dismiss for failure to state a claim, which Maryland Casualty argued was tantamount to a motion for summary judgment since the trial court had considered evidence outside the pleadings. Maryland Casualty further argued that Rule 41(a) does not permit dismissal of *claims*, but only of an "action." In this context, the Fifth Circuit noted that the purpose of allowing a unilateral notice of dismissal only prior to the filing of an answer or motion for summary judgment is that once a defendant has become actively involved in its defense, the defendant is entitled to have the case adjudicated and it cannot therefore be dismissed "without either his consent, permission of the court, or a dismissal with prejudice that assures him against the renewal of hostilities." *Exxon*, 599 F.2d at 661. The Fifth Circuit agreed that the lower court had treated Maryland Casualty's motion as one for summary judgment, and thus the filing of that motion had "cut off" Exxon's right to unilaterally dismiss its contractual (second) claim. The Fifth Circuit then addressed Maryland Casualty's second argument – *i.e.*, whether Rule 41(a)(1)(A)(i) permits dismissal of claims rather than an entire action, and held that it did not, because Rule 41 and the rules in general distinguish between the terms "action" and "claim." The Fifth Circuit also distinguished its prior ruling in *Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250 (5th Cir. 1973). *Plains Growers* had permitted a plaintiff to file a notice of voluntary dismissal under Rule 41 of all of its claims against one defendant, despite the fact that the case would remain pending against another defendant, because dismissing all claims against one of several defendants completely removes a party from the case when it has not filed a responsive pleading. The Fifth Circuit in *Exxon* noted that the situation in *Exxon* was quite different:

> Allowing dismissal of the one remaining claim will not relieve Maryland Casualty of its obligation to appear in court; this appeal would still be pending. Thus Maryland

> Casualty would face the possibility of defending overlapping claims in two forums if we were to reverse the summary dismissal of the first claim. At this stage of the proceedings, we cannot allow Exxon to decide unilaterally to put Maryland Casualty to this risk.

*Exxon*, 599 F.2d at 662-663.

Thus, the *Exxon* case does not support the proposition that a plaintiff seeking to dismiss all claims against one of several defendants *must* file a motion under Rule 41 rather than seek leave to amend the complaint under Rule 15. *Exxon* involved a situation where a plaintiff sought to dismiss one of two claims against a single defendant. Its holding did not address Rule 15 at all, and the factual context in which it was decided differs from the present adversary proceeding.

The Judgment Defendants, however, cite to footnote 10 in the *Exxon* decision, in which the Fifth Circuit cited with approval *In re Smith, Kline & French Laboratories v. A.H. Robins Co.*, 61 F.R.D. 24 (E.D. Pa. 1973). The *Smith, Kline* court held that amendment of a complaint under Rule 15(a) is the proper procedure to use where a plaintiff seeks to dismiss one claim against several defendants but does not seek to dismiss all claims as to any one of them. By negative implication, then (and *not* by explicit holding), footnote 10 arguably stands for the proposition that Rule 41, rather than Rule 15, is the proper vehicle to dismiss all claims against one of several defendants.[12]

This Court does not so hold, however, for several reasons. First, the Fifth Circuit's statements in footnote 10 of *Exxon* were *dictum*. Second, the Fifth Circuit went on in footnote 10 to note that it could not deny the motion to dismiss the appeal on the ground that the dismissal of the claim would have been proper under Rule 15, "because none of the conditions for amending a

---

[12] The *Exxon* court did *not* suggest what the consequences might be for filing a motion for leave to amend under Rule 15, rather than a to dismiss under Rule 41, to drop all claims against a single defendant in a multi-defendant action.

**Memorandum Opinion and Order** 17

complaint under that rule have been met. Exxon did not obtain either leave of court or the written consent of Maryland Casualty to amend the complaint." *Exxon*, 599 F.2d at 662, n. 10. Here, however, the conditions for amending a complaint under Rule 15 *were* satisfied. The Trustee sought and received Court leave to file the Second Amended Complaint, and his Amended Motion for Leave disclosed that he sought to amend for the purpose, *inter alia*, of dropping parties where his claims against those parties had been settled or dismissed. In fact, the Trustee filed the Amended Motion for Leave in response to the Judgment Defendants' motion to compel the Trustee to file one. *See* Docket No. 469. Thereafter, the Judgment Defendants expressly consented to the grant of the Amended Motion for Leave, and did not complain that the Trustee was using an incorrect procedure to remove parties from the lawsuit.

Arguably, the filing of the Second Amended Complaint that dropped the McElwee Defendants as parties, rather than the filing of a motion to dismiss the McElwee Defendants as parties, did not comply with the McElwee Settlement Agreement. However, the Judgment Defendants are not the appropriate parties to lodge that complaint and they lack standing to assert any breach of the McElwee Settlement Agreement.[13] Moreover, it is clear that the McElwee Defendants viewed

---

[13] Even if they had standing to complain of the Trustee's alleged breach of a settlement agreement to which they were not parties, the Court would conclude that the Trustee's alleged breach was immaterial. The Judgment Defendants assert that the McElwee Settlement Agreement was breached because the McElwee Defendants were entitled thereunder to a dismissal "with prejudice," but a dismissal under either Rule 41(a) or Rule 15 would be "without prejudice." However, on the facts of this case, a dismissal under either rule would be tantamount to a dismissal "with prejudice," because the McElwee Defendants were released under the McElwee Settlement Agreement and the release was effective upon payment of the settlement sum to the Trustee, not upon the ultimate dismissal of the claims against them. *See* Docket No. 1367 in Case No. 04-35574-BJH, Ex. A ("[e]ffective subject to and upon payment" of $90,000, the Trustee released the McElwee Defendants as provided in the McElwee Settlement Agreement). For this same reason, the Court rejects another of the Judgment Defendants' arguments, advanced at the hearing on the Motion for Amended Findings but not in their briefing. The Judgment Defendants argued at the hearing that this Court's order granting the Trustee's Amended Motion for Leave provided that the filing of the Second Amended Complaint was "without waiver of or prejudice to the parties' rights as to any claims not proceeding to trial by reason of previous rulings of the Court." *See* Docket No. 489. The Judgment Defendants argued that this language encompasses the Court's order approving the McElwee Settlement Agreement, and therefore the McElwee Defendants

themselves as dismissed from the litigation. Some further factual context is required.

On September 10, 2010, two of the McElwee Defendants filed a "Motion to Enforce Settlement Agreement and Enjoin Further Litigation" ("Motion to Enforce"). *See* Docket No. 740 in Case No. 04-35574-BJH. The Motion to Enforce alleged that the Trustee had entered into the McElwee Settlement Agreement in 2008 that was subsequently approved by this Court, and that the McElwee Defendants had (i) paid $90,000 in cash to the Trustee, (ii) given up over $280,000 in proofs of claim and (iii), in exchange, had been released. It further alleged that in July, 2010, the Trustee filed a "Complaint" against two of them, seeking to assert claims under 11 U.S.C. § 550 and Texas's Uniform Fraudulent Transfer Act, which they argued had been released by the McElwee Settlement Agreement.[14] They asserted that the Trustee should be enjoined from further litigation against them, because "they have a valid release, approved by this Court, as well as a final judgment dismissing the claims against them." *Motion to Enforce*, p. 10. They further argued that such an injunction would be in the public interest because "the Trustee now seeks to deprive [them] of the hard-won protections of the Court-Approved Settlement, which they obtained at considerable cost in both cash and forgone claims. Allowing the Trustee to manipulate the process in this fashion – obtaining settlement payments and later suing on the same claims – undermines the bankruptcy process, harms the public interest, and for both reasons, justifies injunctive relief." *Id.* at p. 11. The Motion to Enforce was set for hearing on October 18, 2010, but was never heard because it was

remained entitled, notwithstanding the filing of the Second Amended Complaint dropping them as parties, to a dismissal with prejudice of the claims against them. As noted earlier, a dismissal of the claims against them was completely unnecessary, as those claims had been released upon payment of the $90,000, so even assuming they were dropped "without prejudice" as a result of the Trustee dropping them through the use of Rule 15, their removal from the lawsuit through that vehicle was effectively "with prejudice."

[14] The details regarding the filing of this "Complaint" in the Southern District of Texas are set forth in this Court's Memorandum Opinion entered on May 22, 2011 in Adv. Pro. No. 10-3357-BJH.

withdrawn on October 14, 2010, the day following the Trustee's filing in the Southern District of Texas of a "Notice of Partial Dismissal" of the claims asserted against the two McElwee Defendants. *See* Docket No. 216 in S.D. Tex. Misc. Pro. No. 10-301.[15]   From these facts, it should be clear that the McElwee Defendants viewed themselves as out of the case, and certainly consented to their dismissal.

The Judgment Defendants also cite *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004) for the proposition that when a plaintiff seeks to dismiss all claims against one of several defendants, the plaintiff must comply with Rule 41.   But like the *Exxon* case, the *Klay* case addressed whether Rule 41 could be used to voluntarily dismiss only *some,* but not *all*, claims against a defendant.   The *Klay* court concluded that it could not, because of the distinction in the rule between the term "claim" and the term "action."   In the course of its discussion, the Eleventh Circuit noted, however, that the plaintiff had filed a notice of voluntary dismissal and the district court had entered an injunction order against the prosecution of the claims purportedly dismissed.   While the Eleventh Circuit concluded that the use of Rule 41 rather than Rule 15 was technically improper, it also noted that "[w]e could overlook this flaw and construe both the notice and the order as being brought under Rule 15 rather than Rule 41; we could further assume that, under this rule, the court was correct in allowing plaintiffs to amend," but noted that even if it had done so, the lower court's ruling that there was therefore no justiciable controversy for an arbitration panel to resolve was legally incorrect. Therefore, the *Kaye* case supports the notion that where there has been a technical error in using the wrong rule to dispose of claims against a defendant, the court may overlook it and construe the

---

[15] This Court takes judicial notice of the docket and filed pleadings pursuant to Fed. R. Evid. 201.   *Hernandez v. United States*, No. EP-09-CV-00164-KC, 2010 WL 8033181 (W.D. Tex. Dec. 7, 2010).

**Memorandum Opinion and Order**                                                                                                   **20**

motion as being brought under the correct rule.

The Federal Rules of Bankruptcy Procedure, like the Federal Rules of Civil Procedure, "shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001; *In re Cano*, 410 B.R. 506 (Bankr. S.D. Tex. 2009). Other courts have noted that a faulty Rule 15 motion may be construed instead as a motion to dismiss under Rule 41. *Southcrest, L.L.C. v. Bovis Lend Lease, Inc.*, No. 10-CV-0362-CVE-FHM, 2011 WL 1793388 (N.D. Okla. May 11, 2011). In fact, several courts have noted that there is little difference in practical effect between the use of Rule 41 versus the use of Rule 15 to drop parties. *See, e.g., In re Legal Xtranet, Inc.*, No. 11-51042-LMC, 2011 WL 3652756 (Bankr. W.D. Tex. Aug. 19, 2011) (and cases cited therein). Here, even assuming the Trustee's decision to drop all claims against the McElwee Defendants by amendment to the complaint under Rule 15 rather than by motion to voluntarily dismiss under Rule 41 was a procedural mis-step, the Court may construe the Trustee's Amended Motion for Leave as a motion under Rule 41. As noted above, in either case, dismissal of the claims against the McElwee Defendants was done with leave of Court, which was sufficient to comply with either rule.

There is no support in the record for the Judgment Defendants' current stance that the Trustee's Amended Motion for Leave was, in reality, a motion for separate trial, and their assertion that the Trustee's claims against the McElwee Defendants "remain to be adjudicated" is simply preposterous in light of, among other things, the release contained in the McElwee Settlement Agreement. Therefore, the Court declines to conclude that the Judgment lacks finality because it failed to dispose of the Trustee's claims against the McElwee Defendants.

Moreover, as noted earlier, an amended complaint "supercedes the original complaint and

renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 246 n. 2 (5th Cir. 2010) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)); *Ross v. Hutchins Police Dept.*, No. 3:09-CV-0168-M, 2009 WL 1514364 (N.D. Tex. May 29, 2009). Here, the Second Amended Complaint did *not* refer to, adopt, or incorporate either the original complaint or the first amended complaint. *See Second Amended Compl.*, Docket No. 493. Its filing was with Court approval and the Judgment Defendants' express consent. Accordingly, the original and first amended complaints were superceded and rendered void of legal effect upon the filing of the Second Amended Complaint. The Second Amended Complaint contained no claims against the McElwee Defendants, and thus the Judgment after trial of the causes of action in the Second Amended Complaint is not deprived of finality by its failure to address non-existent claims against the McElwee Defendants.


(iii)     *Claims against Kroney-Mincey, Inc. and Robert Kroney*

The Judgment Defendants also contend that the Judgment lacks finality because it failed to dispose of claims against Robert H. Kroney and Kroney-Mincey, Inc., a law firm and one of its partners which represented Heritage at one point. The following facts are relevant here.

The Trustee's original and first amended complaints asserted certain claims against these two defendants. On June 12, 2007, the Trustee filed a "Motion for Approval of Compromise and Settlement with Kroney-Mincey, Inc." (the "Kroney Compromise Motion"). *See* Docket No. 1184 in Case No. 04-35574-BJH. The two defendants were collectively defined in that motion, and in the settlement agreement attached to the motion (the "Kroney Settlement Agreement"), as the "Kroney Defendants." The terms of the Kroney Settlement Agreement relevant to the present dispute are:

Kroney-Mincey Inc.'s insurance carrier was to make a $300,000 payment to the Trustee[16] no later than the next business day following the settlement's "Effective Date," which was essentially defined as the first business day after this Court entered an order approving the Kroney Settlement Agreement and such order became final. It further provided that "Effective as of the Effective Date, and expressly subject to receipt of the Payment by the Trustee," the Trustee released the Kroney Defendants. The Trustee agreed to immediately, upon execution of the Kroney Settlement Agreement, file a notice of dismissal without prejudice of the Trustee's claims against Robert H. Kroney pursuant to "Rule 41(a)(1)(i)" [sic] with a temporary tolling of the statute of limitations on those claims. *See* Ex. A to the Kroney Compromise Motion, p. 2. It further provided that by no later than the next business day following the Effective Date, the Trustee would file, "pursuant to Rule 41(a)(1)(i)," [sic] notices of dismissal with prejudice of the claims against both defendants, with the form to be entered as to Robert H. Kroney attached to the Kroney Settlement Agreement. *See* Ex. A to the Kroney Compromise Motion, p. 3. Therefore, the Trustee essentially agreed to dismiss, without prejudice, his claims against Robert H. Kroney immediately upon execution of the Kroney Settlement Agreement, and to dismiss his claims against both of the Kroney Defendants with prejudice the day following the Effective Date, subject to receipt of the $300,000 payment.

The Kroney Compromise Motion was served on, among others, then-counsel for the Judgment Defendants, and they were given the opportunity to object by July 2, 2007. No objections were forthcoming, *see* Docket No. 1225 in Case No. 04-35574-BJH, and the docket reflects that this Court entered an order granting the Kroney Compromise Motion on July 12, 2007. *See* Docket No.

---

[16] Kroney-Mincey, Inc. represented in the Kroney Settlement Agreement that it had the authority to bind its insurance carrier to this payment obligation. *See* Ex. A to Docket No. 1184 in Case No. 04-35574-BJH.

1234 in Case No. 04-35574-BJH.  On the same date that the Kroney Compromise Motion was filed, the Trustee filed a "Notice of Dismissal Without Prejudice of Claims Against Defendant Robert H. Kroney," in the form which had been attached to the Kroney Settlement Agreement.  *See* Docket No. 152.  As the Judgment Defendants point out, this notice is signed only by counsel for the Trustee and is not signed by either of the Kroney Defendants.

On July 25, 2007, the Trustee filed a "Notice of Dismissal with Prejudice of Claims Against the Kroney Defendants."  *See* Docket No. 154.  This notice too is signed only by counsel for the Trustee and is not signed by either of the Kroney Defendants.

The Judgment Defendants argue that these notice of dismissal were "ineffective" because they were signed only by the Trustee and not by all parties who had appeared in the adversary proceeding as required by Rule 41(a)(1)(A)(ii).[17]  The Judgment Defendants further argue that even if it had been signed by counsel for the Kroney Defendants, it still may have been ineffective because Rule 41 "speaks of dismissal of an action, and the plaintiff's elimination of a fragment of an action . . . is more appropriately considered to be an amendment to the complaint under Rule 15."  *Judgment Defs.' Br.*, p. 8, n. 9 (*quoting Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298, 302, n.2 (5th Cir. 1978)).  Lastly, the Judgment Defendants assert that although the Fifth Circuit has not demanded strict compliance with the signed writing requirement in Rule 41(a)(1)(A)(ii), it has demanded  something "unequivocal and in the record"  in order to demonstrate that the dismissal was agreeable to all parties who have appeared in the action.  *Id.* at p. 8 (*citing Ocean Drilling & Exploration Co. v. Mont Boat Rental Services, Inc.*, 799 F.2d 213, 218 (5th Cir. 1986)).  The Court will address these arguments

---

[17] Rule 41(a)(1)(A)(i) is inapplicable here, since the Kroney Defendants filed a joint answer to the original complaint prior to the Trustee's dismissal of the claims against them under Rule 41.  *See* Docket No. 68.

**Memorandum Opinion and Order**                                                                     **24**

together.

First, the Court notes that the Trustee and the Kroney Defendants *agreed* to this procedure – *i.e.*, the filing by the Trustee of a notice of dismissal under Rule 41(a)(1)(A)*(i)*, not Rule 41(a)(1)(A)*(ii)*, in the Kroney Settlement Agreement. Thus, it appears in the record that the Kroney Defendants waived their rights to be signatories to a stipulation of dismissal under Rule 41(a)(1)(A)(ii), and their consent to this procedure and to their dismissal from the lawsuit is "unequivocal and in the record." *Ocean Drilling*, 799 F.2d at 218; *see also Chiles v. Stephens*, No. 87-1942, 1994 WL 150733 (E.D. La. Apr. 8, 1994) (stating that courts have not insisted on a writing when it is clear that the parties have in fact entered into the contemplated dismissal, and finding that an unopposed, jointly-prepared motion to dismiss was sufficient evidence of a stipulation).

Second, the Kroney Compromise Motion was served on then-counsel for the Judgment Defendants, who were given the opportunity to object to this procedure or to the dismissal of the Kroney Defendants, but they failed to lodge such objections. Their implicit consent to this procedure and to the dismissal of the Kroney Defendants is therefore also "unequivocal and in the record." *See* Docket No. 1225 in Case No. 04-35574-BJH (Certificate of No Objection filed pursuant to N.D. Tx. L.B.R. 9019.1, permitting the use of "negative notice language"). The same is true with respect to every other defendant in this adversary proceeding.[18]

---

[18] At the time the Kroney Compromise Motion was filed, the Trustee's claims against the McElwee Defendants had not yet been settled, but the McElwee Defendants were represented by the same counsel who represented the Judgment Defendants and all other Kornman-related entities, Cole Ramey, Esq., although they later retained separate counsel. *See* Docket No. 197. The Trustee's claims against Vickie Walker also remained "live" at the time of the filing of the Kroney Compromise Motion, but she too was represented by Mr. Ramey, although she too later retained separate counsel. *See* Docket No. 229. The Koshland Family Partnership, L.P. ("Koshland") was a named defendant, but was separately represented by Jackson Walker, L.L.P. *See* Docket No. 127. That firm was served with the Kroney Compromise Motion and failed to object. Moreover, the record reflects that by the time the Kroney Compromise Motion was filed, Koshland had also executed a settlement agreement with the Trustee. *See* Ex. A to Docket No. 1153 in Case No. 04-35574-BJH. The Trustee's claims against the "Mann Entities" were settled prior to the filing of the Kroney Compromise Motion and those claims had been dismissed. *See* Docket No. 89.

Third, as noted earlier, the Judgment Defendants stipulated, and the Court "So Ordered" the Stipulation, that the Trustee's Amended Motion for Leave (to file his Second Amended Complaint) be granted, and therefore that no claims against the Kroney Defendants remained for trial (because the Second Amended Complaint asserted none). That Stipulation is tantamount to a consent to dismissal of the claims against the Kroney Defendants, and it too is "unequivocal and in the record." *Ocean Drilling*, 799 F.2d at 218. The facts of *Ocean Drilling*, where the Fifth Circuit refused to recognize that a plaintiff had successfully voluntarily dismissed certain claims, are clearly distinguishable. There, the stipulation was purely an off-the-record, oral stipulation.

Fourth, for the same reasons discussed above in the Court's analysis of the interplay between Rules 15 and 41 in connection with its discussion of the claims against the McElwee Defendants, the Court believes that the Fifth Circuit would permit the use of Rule 41 to dismiss all claims against the Kroney Defendants, despite the fact that Rule 41 speaks in terms of dismissal of an "action" and not dismissal of "claims." *Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250 (5th Cir. 1973). Further, even to the extent that the Judgment Defendants cite to *Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298 (5th Cir. 1978) for the proposition that dismissal of a fragment of an action requires the use of Rule 15 and not Rule 41, the Court notes that the Trustee *also* used Rule 15 here, to drop any claims against the Kroney Defendants, with the Judgment Defendants' express consent. And as further noted above, the Second Amended Complaint, which contained no claims against the Kroney Defendants, superceded the original and amended complaints and rendered them of no legal effect, because the Second Amended Complaint did not refer to or adopt either of its two predecessors. *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 246 n. 2 (5th Cir. 2010). For all of these reasons, the Court declines to conclude that the Judgment lacks finality for its failure to dispose of

claims against the Kroney Defendants.

(iv)    *Claims against GMK Corp., Kornman & Associates, Inc. And Leasecorp Inc.*

The Judgment Defendants next assert that the Judgment lacks finality because there was no adjudication of any of the claims under 11 U.S.C. § 550 against GMK Corp. ("GMK"), Kornman & Associates, Inc. ("K&A") or Leasecorp, Inc. ("Leasecorp").   The Stipulation respecting claims remaining for trial and the parties' Joint Pre-Trial Order indicated that the Trustee was pursuing those claims, yet the Judgment Defendants assert that they are not addressed in either the Judgment or the 2009 Memorandum Opinion.

The Trustee concedes that these three entities were (i) named as defendants in the Second Amended Complaint, (ii) included in the Joint Pre-Trial Order, and (iii) listed in the Stipulation as "live" defendants with respect to claims under Section 550 with respect to any transfers which the Court found avoidable under Count 1 of the Second Amended Complaint.   Initially, the Trustee argued that the 2009 Memorandum Opinion "made clear" that the Trustee did not prevail on these claims, and that once the Judgment was entered, "this Court's decisions incorporated in the . . . Memorandum Opinion . . . were also final and appealable." *Trustee's Br.*, pp. 14-15.[19]  By the time of the hearing on the Motion for Amended Findings, however, the Trustee switched gears and argued that his claims under Section 550 against these entities had been abandoned at trial, as is evidenced

---

[19] The Trustee did not cite to any case law supporting this proposition.  The Court agrees with the Judgment Defendants, however, that the 2009 Memorandum Opinion does not discuss these Section 550 claims against these entities; rather, it discusses the Section 550 claim asserted in Count 5 of the Second Amended Complaint only as it related to Gary Kornman and Ettman Family Trust I. The Trustee's quotation of language from page 96 of the 2009 Memorandum Opinion, is, as the Judgment Defendants point out, incomplete and out of context – and when the complete sentence is read, in context, it is clear that the Court was adjudicating *Kornman's* liability under Section 550, not Leasecorp's.  Further, the Court agrees with the Judgment Defendants that the quoted language appears in the context of the Court's discussion of the Trustee's *preference* claims, not the Trustee's *fraudulent conveyance* claims. The Section 550 claims against the three relevant entities were "limited" to recovery from them of fraudulent conveyances.

by the filing of the "Trustee's Amended Proposed Findings of Fact and Conclusions of Law" ("Trustee's Post-Trial Proposed Findings"). *See* Docket No. 563. In the section of the Trustee's Post-Trial Proposed Findings addressing this Section 550 claim, the Trustee states:

> Because the [transfers] are avoided, the Trustee may recover the value of all such transfers from the initial transferees. 11 U.S.C. § 550(a). Defendants have established no defenses under Section 550 of the Bankruptcy Code. Judgment therefore will be awarded to the Trustee in the full amount of the [transfers] against Defendants Steadfast, GMK Family and Tikchik, and to Kornman as the person for whose benefit such transfers were made . . . . The Trustee has further proven certain subsequent transfers of such property to mediate or immediate transferees of such initial transferees, which may be avoided and recovered under Section 550(a)(2) of the Bankruptcy Code. These are: (a) the transfer of $10,440,000 by Steadfast to Kornman on or about July 19, 2001; (b) the transfer of $600,000 from GMK Family to Kornman on or about July 20, 2001; and (c) the transfer of cash and other property worth $4,000,000 from Steadfast to Ettman on or about July 26, 2002. Defendants have established no defenses under Section 550 of the Bankruptcy Code. The Trustee is entitled to judgment avoiding these transfers and for the amount thereof. *Id.* at p. 54-55.

The Trustee argued at the hearing on the Motion for Amended Findings that this filing evidences the fact that the Trustee knew he had not proven Section 550 claims against GMK, K&A or Leasecorp, and therefore abandoned any such claims.

Courts routinely find claims abandoned when they are not pressed at trial or in post-trial briefing. *See, e.g.*, *Thermalon Indus., Ltd. v. United States*, 51 Fed. Cl. 464 (Fed. Cl. 2002) (plaintiff abandoned claim for consequential damages by presenting no evidence of such damages at trial and failing to mention them in post-trial briefing); *Harbison v. Little*, 723 F.Supp.2d 1032, 1038 (M.D. Tenn. 2010) ("Although this court's decision did not explicitly address Count Seven, this was because Harbison abandoned the claim after trial. If a plaintiff fails to include arguments regarding a claim in a post-trial brief, the court is justified in finding that the plaintiff has abandoned that claim"); *United States v. Livecchi*, 605 F.Supp.2d 437 (W.D.N.Y. 2009) (finding a counterclaim abandoned where

it was not discussed in post-trial brief); *In re Henderson*, 134 B.R. 147 (Bankr. E.D. Pa. 1991). In most – but not all – of these cases, there is a finding by the trial court in its opinion that claims have been abandoned, but that is not the case here. The 2009 Memorandum Opinion is silent as to the abandonment of the Section 550 claims.

However, not all courts have found such silence dispositive. In *Harbinson v. Little*, 723 F.Supp.2d 1032 (M.D. Tenn. 2010), an inmate brought an action under 42 U.S.C. § 1983 challenging Tennessee's lethal injection protocol. The district court held the protocol unconstitutional and enjoined the state from executing the inmate pursuant to that protocol. The state appealed to the Sixth Circuit. Before that appeal was decided, the United States Supreme Court upheld the constitutionality of Kentucky's lethal injection protocol, which was substantially similar, and thus the Sixth Circuit vacated the district court's decision and remanded the case to the district court. On remand, the inmate filed a motion for leave to amend his complaint. He argued that count 7 of his complaint, which had alleged a claim under the federal Controlled Substances Act, was still pending and could be amended. The district court disagreed and found that count 7 had been abandoned after trial. The district court noted:

> Although this court's decision did not explicitly address Count Seven, this was because [the plaintiff] abandoned the claim after trial . . . the evidentiary hearing in this case was not limited to only a subset of [the plaintiff's] claims, and the plaintiff was free to present evidence regarding his federal drug law claim. After the evidentiary hearing, both parties filed Proposed Findings of Fact and Conclusions of Law, detailing the conclusions they argued were warranted by the evidence. [The plaintiff's] 98-page filing did *not* propose a finding that Tennessee's protocol violates the Controlled Substances Act. Because his post-trial brief completely ignored Count Seven, the court finds that [the plaintiff] abandoned the claim and that he cannot now revive it.

*Harbison*, 723 F.Supp.2d at 1038 (internal citations omitted). The *Harbison* case is on all fours with the present case. The Trustee was free at trial to present evidence respecting the Section 550 claims

against GMK, K&A and Leasecorp. The Trustee did not do so, did not include any proposed findings on these claims in his Post-Trial Proposed Findings, and did not, post-trial, brief the application of Section 550 to these entities. This Court reaches the same conclusion as the *Harbison* court: although the 2009 Memorandum Opinion did not mention the Section 550 claims, it did not do so because they had been abandoned. The failure to include an express finding of abandonment in the 2009 Memorandum Opinion does not mean that the Section 550 claims remain to be adjudicated. As the Judgment Defendants concede, a judgment is final when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Judgment Defs.' Br.*, p. 2 (*quoting Riley v. Kennedy*, 553 U.S. 406, 419 (2008). There was nothing for the Court to do further here with respect to the Section 550 claims, because the Trustee had failed to prove them at trial and had failed to address them in his Post-Trial Proposed Findings and thus they had been abandoned.

The case cited by the Judgment Defendants does not require a different result. The Judgment Defendants cite *Adams v. Travelers Indem. Co. Of Connecticut*, 465 F.3d 156, 167 (5th Cir. 2006) for the proposition that a court will not infer that a claim has been adjudicated where a memorandum opinion makes no mention of it. *See Judgment Defs.' Reply*, p. 4, n. 12. The factual context in which the Fifth Circuit made that statement in *Adams*, however, differs significantly from that in the present adversary proceeding. In *Adams*, the plaintiff Adams was employed by Goodyear Tire and Rubber Company ("Goodyear"). Goodyear maintained insurance with Travelers Indemnity Company of Connecticut ("Travelers"). Adams was involved in a car accident while driving Goodyear's vehicle, which injured Patrick Mayes ("Mayes"). Mayes sued Adams and Goodyear, but Travelers refused to cover Adams, arguing that Adams was not defined as an insured under Goodyear's policy, because

he had not had Goodyear's permission to drive the vehicle at the time of the accident which injured Mayes. Adams then sued Travelers, alleging violations of the Texas Insurance Code, the Texas Deceptive Trade Practices Act, common-law bad faith and fraud and breach of contract for refusal to provide coverage. Travelers moved for summary judgment, arguing that the claims failed because Adams was not an insured under the policy. The district court granted Traveler's motion and Adams appealed. The Fifth Circuit reversed and remanded, because it found that there was a genuine issue of material fact with respect to whether Adams had Goodyear's permission to drive the vehicle and therefore whether Adams qualified as an insured. The Fifth Circuit noted that Adams had also alleged non-contractual claims depending on the "yet unresolved coverage question." *Adams*, 465 F.3d at 167. It therefore noted that summary judgment on the claims pursuant to the Texas Insurance Code, the Texas Deceptive Trade Practices Act and common-law bad faith was inappropriate. It further stated that "Travelers gave only cursory attention to the allegation of fraud in its motion for summary judgment, and the District Court's memorandum opinion accompanying its order made no mention of it. This claim remains to be adjudicated." *Adams*, 165 F.2d at 167-68. The Fifth Circuit was there reversing a summary judgment in favor of Travelers which had rendered adjudication of Adams' other claims unnecessary, because the district court had found, erroneously, that Adams had failed to raise a genuine issue of material fact with respect to coverage under the policy, and his other claims depended on the "yet unresolved coverage question." *Adams*, 465 F.3d at 167. Therefore, the case was going back to the district court for another resolution on the merits, and the Fifth Circuit simply stated that the fraud claim remained for adjudication because it had not been mentioned in the memorandum opinion. On these facts it is apparent that it had not been mentioned because the district court's erroneous grant of summary judgment on the coverage question had rendered

consideration of the claim unnecessary. There is no suggestion that the fraud claim had been abandoned, as there is in the present adversary proceeding. Here, the Trustee did not include any proposed findings or conclusions as to these Section 550 claims in the Trustee's Proposed Post-Trial Findings. The Trustee did not brief the application of Section 550 in his post-trial brief. The Trustee agreed to a form of judgment, and in fact proposed his own form of judgment, which was titled "Final Judgment" and which included no mention of the Section 550 claims against GMK, K&A and Leasecorp. The Trustee clearly abandoned these claims.

Moreover, as counsel for the Judgment Defendants conceded at the hearing on the Motion for Amended Findings, *everyone*, including this Court, believed that the Judgment was final. The Fifth Circuit has quite clearly pronounced that the intention of the judge is crucial in determining finality. *Vaughn v. Mobil Oil Exploration & Producing Southeast, Inc.*, 891 F.2d 1195, 1197 (5th Cir. 1990). The *Vaughn* case is instructive. The plaintiff Vaughn worked for Mobil Oil Exploration and Producing Southeast, Inc. ("Mobil") on a barge owned by Elevating Boats, Inc. ("EBI") and chartered by Mobil. Vaughn was injured at work. Mobil paid workers' compensation benefits to Vaughn. Vaughn then sued both Mobil and EBI. EBI cross-claimed against Mobil for indemnity, and Mobil cross-claimed against EBI for contractual indemnity. Vaughn settled with both defendants, such that only the cross-claims remained. The district court ordered Mobil and EBI to submit the remaining claims to the court for a merits determination on the briefs and evidence in the record. Mobil filed a motion for summary judgment, which EBI opposed, but EBI did not pursue its cross-claim. The district court denied Mobil's motion and set a pretrial conference, which EBI failed to attend. Mobil then re-urged its summary judgment, which the district court granted as unopposed. The district court entered judgment in favor of Mobil and against EBI and closed the case. Some six

months later, EBI moved to vacate the judgment under Rule 60(b)(6). The district court denied that motion on the grounds that the judgment was not final, because it had left open EBI's cross-claim. The district court then withdrew the judgment and ordered a merits determination of the cross-claims. On appeal, Mobil argued that the judgment had been final and therefore the district court lacked authority to withdraw it and rule on the merits.

The Fifth Circuit first noted that the intention of the judge is "crucial" in determining finality. *Vaughn*, 891 F.2d at 1197. Next, the Fifth Circuit noted that "a practical rather than a technical construction best serves the policies underlying the purposes of the finality requirement," *id.*, (internal citations omitted) and "we are inclined to fasten finality upon a judgment that reflects the intention of the judge to dispose of all business before him or her." *Id.* The Fifth Circuit noted that the judgment before it was "couched in language calculated to conclude all claims . . . the language was specific and heavy with conclusion. Nothing in the district court's disposition suggested that the judgment was incomplete." *Id.* It further noted that "When, after the passage of nine months, EBI reurged its long-abandoned cross-claim, it did so via a motion to set aside judgment pursuant to rule 60(b) . . . [t]hus, even when it was contrary to its interests, EBI treated the . . . judgment as final." The Fifth Circuit concluded that in these circumstances, the district court erred in later treating the judgment as interlocutory. The Fifth Circuit rejected EBI's arguments under Rule 54(b) that because the judgment had not included an express determination that there was no reason for delay in taking an appeal, it was not a final judgment, noting that "Rule 54 does not reach out to preserve claims that the parties do not actively pursue." *Id.* at 1198. Because the Fifth Circuit concluded that EBI had abandoned its cross-claims, that abandonment "removed the suit from rule 54(b)." *Id.* Since EBI had abandoned its cross-claims, the judgment "did in fact dispose of all the live issues" before the district

court. *Id.* (*citing Jones v. Celotex Corp.*, 867 F.2d 1503, 1503-04 (5th Cir. 1989) ("an order that effectively ends the litigation on the merits is an appealable final judgment even if the district court does not formally include judgment on a claim that has been abandoned")).

Numerous Fifth Circuit cases decided since *Vaughn* have followed its pronouncements: *DirectTV, Inc. v. Budden*, 420 F.3d 521 (5th Cir. 2005) (finding finality where district court's judgment only expressly disposed of one of plaintiff's claims against the defendant but did not expressly determine that there was no just reason for delay under Rule 54(b), where plaintiff had abandoned its other claims against the defendant and the district court had intended to dispose of all claims before it); *Moreau v. Harris County*, 158 F.3d 241, 243 (5th Cir. 1998), *aff'd on other grounds*, 529 U.S. 576 (2000) ("If a party abandons one of its claims, a judgment that disposes of all remaining theories is final and appealable so long as it is apparent that the district judgment intended the judgment to dispose of all claims").

The Judgment Defendants assert, however, that the Court's intent is relevant only "when it is clear from the record that all claims were, in fact, adjudicated." *Judgment Defs.' Reply*, p. 2. The Judgment Defendants quote from two Fifth Circuit cases which state:

> in circumstances in which a court order is ambiguous as to what parties and claims are being disposed of and the district court intended to effect a final dismissal of a claim, we will construe its order accordingly, despite ambiguous language that might indicate otherwise. However, when the record clearly indicates that the district court failed to adjudicate the rights and liabilities of all parties, the order is not and cannot be presumed to be final, irrespective of the district court's intent.

*Witherspoon v. White*, 111 F.3d 399, 401-02 (5th Cir. 1997); *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir. 2001) (*quoting Witherspoon*).[20]   In other words, where a judgment is ambiguous, the court's

---

[20] *Witherspoon* is factually distinguishable from the present adversary proceeding.  In that case, the plaintiff filed an action against six defendants.  Five of the defendants filed a motion to dismiss or, in the alternative, a motion

intent is considered, but where the record clearly indicates that the judgment fails to adjudicate the rights and liabilities of all parties, it is not. The Judgment Defendants argue that the Judgment clearly fails to adjudicate the claims against GMK, K&A and Leasecorp, and thus the Court's intent is irrelevant.

What the Judgment Defendants overlook is that the Fifth Circuit looks not only to *the face of the judgment at issue*, but also to the *record* to determine whether the judgment adjudicates the rights and liabilities of all parties. *See, e.g. Vaughn*, 891 F.2d at 1198 ("EBI having abandoned its cross-claim, the judgment of the district court did in fact dispose of all the live issues before it"). The record here does not clearly indicate that this Court failed to adjudicate the Section 550 claims such that they remain "live" claims – rather, it indicates that the claims were abandoned. To the extent the Judgment is ambiguous in this regard, this Court may properly consider its intent in entering the Judgment.

The record clearly shows that the Court intended to dispose of all remaining "live" claims by entering the Judgment. The Judgment is titled "Final Judgment." While labeling a judgment as "final" does not make it so, *Witherspoon*, 111 F.3d at 403, such labeling "*does* illuminate the . . . court's intent . . . ." *DirecTV*, 420 F.3d at 526 (emphasis in original). The language in the Judgment is

for summary judgment. The magistrate judge recommended to the district court that the motion be granted as a motion for summary judgment. After that report and recommendation, the sixth defendant filed its own motion for summary judgment, but neither the magistrate nor the district court reviewed it. The district court adopted the magistrate's report, and issued a separate final judgment, which simply stated that "the defendants' motion to dismiss" (without specifying *which* defendants) was granted (despite adopting the recommendation that the motion be granted as a summary judgment). The separate judgment purported to dismiss the plaintiff's *entire complaint* with prejudice. The Fifth Circuit concluded that despite ambiguities apparent on the face of the judgment, the district court had ruled on the motion by the five defendants only, and the motion by the sixth remained "live and undetermined," such that the plaintiff's claims against the sixth defendant remained viable and intact. *Witherspoon*, 111 F.3d at 402. Therefore, it was clear from the record that the judgment had failed to adjudicate the claims against the sixth defendant, and the Fifth Circuit concluded that the judgment lacked finality. Here, of course, the Court has concluded that the Trustee abandoned his Section 550 claims against GMK, K&A and Leasecorp. There is therefore nothing left to adjudicate as to these parties.

"specific and heavy with conclusion." *Vaughn*, 891 F.2d at 1197. Nothing in the Judgment, or in the 2009 Memorandum Opinion, suggests that the Judgment was "incomplete." *Id*. It recites that "the Court tried *all remaining claims* in this adversary proceeding . . ." *Judgment*, p. 1. It permits execution and "all other legal process to enforce this Final Judgment . . . ." *Id*. at p. 5. Finally, there are other objective indications in the record that this Court intended its Judgment to be "final." Again, some further factual background is required.

Shortly after this Court entered the 2009 Memorandum Opinion, then-counsel for the Judgment Defendants, Wick Phillips LLP (the "Wick Firm") filed a "Motion for Withdrawal of Counsel" (the "Motion to Withdraw"), *see* Docket No. 586, and sought an expedited hearing on the Motion to Withdraw. The Motion to Withdraw sought withdrawal "effective upon entry of the Final Judgment . . . .". Judgment Defendants opposed the Motion to Withdraw.[21] The Court held a hearing on the request to expedite the hearing on the Motion to Withdraw on June 3, 2009. At the conclusion of the June 3, 2009 hearing, the Court scheduled an evidentiary hearing on the contested Motion to Withdraw for June 23, 2009. The Judgment Defendants then filed "Defendants' Motion for Continuance of Hearing Set for June 23, 2009," *see* Docket No. 598, in which they alleged that they needed a continuance "to allow Mr. Kornman to meet with possible substitute counsel and engage appellate counsel for Defendants prior to entry of a Final Judgment in this case." *Id.*, at p. 2. One of the bases for the Judgment Defendants' opposition to the Motion to Withdraw was that

---

[21] The docket does not reflect that the Judgment Defendants filed any pleadings in response to the Motion to Withdraw. However, the Motion to Withdraw itself alleged that "counsel for Defendants are unable to provide this Court with a signature of the Defendants confirming Defendants' consent because such consent has been withdrawn and Defendants now oppose this Motion." *Motion to Withdraw*, pp. 2-3. Further, the Court held a status conference on the Motion to Withdraw on June 3, 2009, and Kornman (appearing for himself individually and in his capacity as principal of the entity defendants) made clear he opposed the Motion to Withdraw. The Court held hearings on the Motion to Withdraw on June 23, 2009 and July 2, 2009, at which Kornman testified in opposition to the Motion to Withdraw.

they recognized that their time to appeal would run from entry of the Judgment, and they wanted to obtain substitute counsel and/or appellate counsel. The Court ultimately re-scheduled the hearing on the Motion to Withdraw from June 23, 2009 to July 2, 2009.

During the course of these various hearings, the parties and the Court made comments which establish that *all parties*, and the Court, intended the Judgment to be final, because those comments reflect a recognition that the Judgment Defendants' appellate clock would start ticking upon entry of the Judgment. For example, at the June 3, 2009 hearing, the Court indicated:

> I'm willing to hold off for a reasonable period of time from entry of the judgment. That gives you a bit more time to try and find counsel. I don't feel like I am able to hold off, because that will be prejudicial to the Trustee, for an unreasonable time. . . . I can't prejudice the Trustee, who is entitled to begin to undertake whatever actions he is going to begin to undertake once the judgment is entered. But I recognize that, once that happens, a clock starts ticking for you.

*Tr.* Hearing held 6/3/09, p. 10:8-20 (Docket No. 590). Counsel for the Trustee stated:

> I understand the Court's dilemma and the considerations that the Court has, but we would certainly request that any delay of entry of the judgment be minimal. Anyone can file a notice of appeal, and there will be a substantial period of time after that before a lot of the hard work has to be done on the appeal.

*Tr.* Hearing held 6/3/09, p. 12:5-10 (Docket No. 590). Similarly, Kornman testified he had been trying to find an attorney to represent him on an appeal. *Tr.* Hearing held 7/2/09, p. 47-48. The Court ruled on the Motion to Withdraw on July 13, 2009. During its ruling, the Court stated:

> Here, it is clear that withdrawal may have a material adverse effect on the Defendants' interests. This lawsuit is ripe for entry of a large money judgment against Kornman and various of the other defendants. Upon entry of that judgment, the judgment defendants will have only a short period of time to file a notice of appeal or motion for reconsideration.

*Tr.* Hearing held 7/13/09, p. 10:15-21 (Docket No. 619). As should be clear from these examples, the Court (and all parties) intended that the Judgment be final.

**Memorandum Opinion and Order**                                                                 **37**

For all of these reasons, the Court declines to conclude that the Judgment lacks finality because it fails to dispose of the Section 550 claims against GMK, K&A and Leasecorp.[22]

    (v)    *Claims against Financial Marketing Services ("FMS")*

The Judgment Defendants next assert that although the Court's 2009 Memorandum Opinion states that the Trustee's "alter ego" and "sham to perpetrate injustice" claims against FMS "fail on the evidentiary record adduced at trial," the Judgment makes no mention of these claims and therefore lacks finality because it fails to adjudicate all claims against all parties. They do not, however, cite to any case law supporting this argument. The argument is based on the following:

With respect to the Trustee's "sham to perpetrate injustice" claim against FMS, this Court held in its 2009 Memorandum Opinion that Texas law governed the claim, and required the Trustee to establish reliance on the financial backing of FMS's owners. *See Faulkner v. Kornman (In re The Heritage Organization, L.L.C.)*, 413 B.R. 438, 522 (Bankr. N.D. Tex. 2009). The Court held that there was no evidence at trial as to who owned FMS, and no evidence of reliance. *Id*. The Court therefore held that the Trustee's claim against FMS failed on the evidentiary record at trial. *Id*. Similarly, with respect to the alter ego claim against FMS, the Court held that it too was governed by Texas law. *Id*. The Court held that there was no evidence establishing (i) who FMS's shareholders were, (ii) that the corporate form was being used to avoid liability, the effect of a statute, or to achieve an inequitable result, or (iii) that corporate formalities had not been followed. *Id*.

The Judgment, however, does not reference FMS at all. It simply states:

> After certain claims in this adversary proceeding were resolved by settlement, judgment, or summary judgment, the Court tried all remaining claims in this adversary

---

[22] This same analysis applies with respect to all of the defendants identified by the Judgment Defendants in footnote 14 of their reply brief.

proceeding from January 7 through January 16, 2009 and heard closing arguments on February 26, 2009. Following careful consideration of the evidence, arguments of counsel, and applicable law, the Court issued written findings of fact and conclusions of law in a Memorandum Opinion entered on May 11, 2009. In accordance with such Memorandum Opinion, the Court now renders its Final Judgment as follows.

*Judgment*, pp. 1-2. The Judgment then awards the Trustee affirmative relief (including transfer avoidance and monetary recovery) as to those defendants which the Court found liable in its 2009 Memorandum Opinion. The Judgment further provides (i) for the recovery of interest and costs of suit, (ii) that the Trustee may only obtain one satisfaction of amounts for which the Court has found certain defendants to be jointly and severally liable, and (iii) that the Trustee is entitled to writs of execution and all other legal process to enforce the Judgment. The Judgment does not, however, state that any relief not specifically granted in the Judgment is denied.

The Trustee points out that the Judgment recited that it was issued "in accordance with such Memorandum Opinion," *see* Docket No. 608, and that this Court has acknowledged on the record that "the judgment incorporated the opinion." *See Trustee's Opp. To Defs.' Mot. To Amend or Modify the Court's Mem. Op. And Order Denying their Mot. To Vacate*, p. 6. The Trustee argues that since the 2009 Memorandum Opinion made clear that the Trustee did not prevail on this claim, and the Judgment incorporated the 2009 Memorandum Opinion, the failure to mention the claims against FMS in the Judgment does not deprive it of finality.[23] The Trustee also fails to cite to any case law supporting this argument.

The Judgment Defendants concede that a judgment must be interpreted in light of the rendering court's opinion, findings, and conclusions of law. *Great Lakes Dredge & Dock Co. v.*

---

[23] The Trustee articulates this argument most clearly in connection with his discussion of the claims against Leasecorp, Inc., GMK Corp., Heritage Advisory Group, LLC and Kornman & Associates, Inc., but its reasoning applies with equal force to the claims against Financial Marketing Services.

*Huffman*, 319 U.S. 293, 295 (1943); *Fagin v. Quinn*, 24 F.2d 42 (5th Cir. 1928) (a judgment is to be construed in light of the court's opinion). Further, where a judgment fails to express the rulings in the case with clarity or accuracy, a court may refer to the findings and the entire record for the purpose of determining what was decided. *Security Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1066 (10th Cir. 1980). Here, the entire record establishes that the claims against FMS were decided. Moreover, the requirement that a judgment be set forth in a separate document embodied in Rule 58 of the Federal Rules of Civil Procedure may be waived. *Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978); *In re Taumoepeau*, 523 F.3d 1213 (10th Cir. 2008); *In re Litas Intern. Inc.*, 316 F.3d 113 (2nd Cir. 2003); *Transit Mgt. Of Southeast Louisiana, Inc. v. Group Ins. Admin., Inc.*, 226 F.3d 376 (5th Cir. 2000) (finding no waiver where party defending appeal moved to dismiss appeal as premature on the ground that judgment appealed from failed to expressly dismiss claims).

Here, there was in fact a separate judgment under Rule 58 and although there is no separate judgment with respect to the claim against FMS, the Judgment Defendants have waived technical compliance with the Rule by invoking Rule 60(b), which by its terms applies only to final judgments, several times since then. *In re Liberty Coal Co., L.L.C.*, No. 09-CV-0371-MJR, 2010 WL 1415998 at *1 (S.D. Ill. Mar. 31, 2010) ("so long as the order from which the parties appealed is a final order, and the parties fail to mention the failure of the court to enter judgment, they will have waived the issue); *see also Mondragon v. Thompson*, 519 F.3d 1078, 1081 (10th Cir. 2008) (where a judgment must be set out in a separate document under Rule 58(a), a failure of the trial court to follow the rule will result in entry of judgment "by legal fiction 150 days after the issuance of the opinion it should have accompanied").

For all of these reasons, the Court declines to conclude that the Judgment lacked finality

because it failed to mention FMS.

      (vi)    *Claims Against Vickie Walker*

The Judgment Defendants recite certain facts with respect to the Trustee's claims against Vickie Walker in their Motion for Amended Findings. Specifically, the Judgment Defendants assert that this Court entered a "Judgment Against Defendant Vickie Walker Pursuant to Federal Rule of Civil Procedure 68" on December 31, 2008, *see* Docket No. 512, which awarded the Trustee $10,631.45 plus post-judgment interest. *See Judgment Defs.' Br.*, p. 5. The Judgment Defendants further recite that the judgment against Ms. Walker "does not contain Fed. R. Civ. P. Rule 54(b) language, and no order of severance appears on the docket." *Id.* at p. 6. However, in the section of their brief entitled "Reasons Supporting Lack of Finality," the Judgment Defendants do not rely upon these facts as a basis for the Court to conclude that the Judgment lacks finality. *See id.*, pp. 6-9. Further, the Judgment Defendants' brief contains no legal argument with respect to the claims against Ms. Walker.[24] Therefore, the Court does not believe from a review of the Judgment Defendants' papers that the Judgment Defendants contend that the Judgment lacks finality because it failed to dispose of claims against Ms. Walker. However, because the Trustee addressed the claims against Ms. Walker in his opposition (presumably in an abundance of caution because the Judgment Defendants had recited certain facts respecting the judgment against her in the factual background section of their opening brief), the Court wanted to clarify this issue. At the hearing on the Motion for Amended Findings, the Court asked counsel for the Judgment Defendants precisely which claims, against which parties, he was relying upon in support of his arguments that the Judgment lacks

---

[24] The Judgment Defendants' reply to the Trustee's opposition to the Motion for Amended Findings also fails to contain any legal argument respecting the claims against Ms. Walker or their effect, if any, on the Judgment's finality.

**Memorandum Opinion and Order**                           **41**

finality.  Counsel clarified that he is relying upon the sets of claims/defendants set forth on pages 6-9 of the moving brief, and those set forth in footnote 14 of his reply brief – none of which include any claims against Ms. Walker.  Audiotape of hearing held 11/22/11 at 3:48:33 - 3:53:11 (on file with the Court).[25]  Therefore, the Court will not address any issues with respect to the Trustee's claims against Ms. Walker, because the Judgment Defendants have raised none.

(vi)     <em>Claims Against Heritage Advisory Group</em>

The Judgment Defendants' initial briefing does not assert that the Judgment lacks finality for its failure to dispose of the Trustee's claims against this entity.  However, in their reply, the Judgment Defendants assert that Heritage Advisory Group was named as a defendant in the Second Amended Complaint and in the parties' Joint Pre-Trial Order, but concedes that the Stipulation respecting claims remaining for trial does not indicate that any claims against this entity remain for adjudication at trial.  Nevertheless, the Judgment Defendants assert that there is no order dismissing all claims asserted against Heritage Advisory Group, and it is not mentioned in the Judgment.

As the Trustee points out and the Court finds, the Stipulation was signed by counsel for Heritage Advisory Group (and by counsel for the Judgment Defendants).  It therefore complies with Rule 41(a)(1)(A)(ii).  Further, the Stipulation was approved by this Court's order, and thus it alternatively complies with Rule 41(a)(2).  Lastly, the Stipulation, at the very least, embodies and evidences the Trustee's abandonment of claims against Heritage Advisory Group.

For all of these reasons, the Judgment does not lack finality because of any claims against

---

[25]Further, a review of the docket discloses that the judgment against Ms. Walker was paid and released by the Trustee prior to issuance of both the 2009 Memorandum Opinion and the Judgment.  *See* Docket No. 571.  The Court does not believe there were any claims against Ms. Walker left to adjudicate once the Trustee obtained a judgment against her, she paid that judgment, and the Trustee thereafter released it.

Heritage Advisory Group.

    B.    *The Stay Motion*

    As noted at the outset, also before the Court is the Judgment Defendants' Stay Motion.  The Judgment Defendants argue that the Judgment is not final, and therefore the Trustee's registration of the Judgment in the Southern District of Texas was improper, and his efforts to enforce the Judgment violate due process under the 14th Amendment to the United States Constitution and should be stayed pending this Court's disposition of the Motion for Amended Findings.  Because the Court has concluded that the Motion for Amended Findings should be denied, the Stay Motion must also be denied.

    C.    *The Dismissal Motion*

    Also before the Court is the Judgment Defendants' Dismissal Motion pursuant to Rules 12(b)(1) and (h)(3), in which they argue that since no final judgment has been entered, this Court retains jurisdiction to determine its jurisdiction and may determine that this adversary proceeding should be dismissed for lack of subject matter jurisdiction, for all of the reasons set forth in their prior *Stern* Motion.  Because the Court has concluded that (i) the Motion for Amended Findings should be denied, and (ii) the Judgment is final, the Dismissal Motion must also be denied as the Court's prior determination of its jurisdiction may not now be attacked.[26]  *See Faulkner v. Kornman (In re The Heritage Organization, L.L.C.)*, 459 B.R. 911 (Bankr. N.D. Tex. 2011).

II.    <u>CONCLUSION</u>

---

[26] The Court assumes, without deciding, that the Judgment Defendants are correct that *Stern* implicates this Court's subject matter jurisdiction.  This position is the subject of much scholarly debate, but this Court need not enter that debate at this juncture because even assuming *Stern* implicates subject matter jurisdiction for Rule 12 purposes, the Court's prior determination of its jurisdiction is *res judicata*, for the reasons set forth in this and the October Opinion.

The Judgment was, is and remains final.  It disposed of all live claims against all live parties; no order of severance was therefore required, and the Court need not address the Judgment Defendants' arguments with respect to the failure of the Judgment to include a certification under Rule 54(b).

To the extent the Court has erred in concluding that the Judgment was final, a jurist wearing a longer robe and sitting on a taller bench than this one will surely say so.  In the meantime, this Court declines to amend its October Opinion to expressly find that no final judgment has been entered, or to find that the Judgment is not final, and therefore the Motion for Amended Findings is denied.  As a result, the Court adheres to its ruling in the October Opinion and declines to vacate the Judgment and the 2009 Memorandum Opinion for the reasons stated in its October Opinion.

Accordingly, the Stay Motion and the Dismissal Motion are also denied.

SO ORDERED.[27]

# # # END OF ORDER # # #

---

[27] A separate judgment is not required with respect to this Memorandum Opinion and Order pursuant to Fed. R. Civ. P. 58(a).